[No. B222487. Second Dist., Div. Six. June 28, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JESSE ALAN TUCKER, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

[*]Pursuant to California Rules of Court, rule 8.110, this opinion is certified for publication with the exception of Discussion, part II., entitled "*Local Conduct Credits*."

## COUNSEL

Alan Mason, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Yun K. Lee and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**YEGAN, J.**—Good cause for the delay of trial exists when an incarcerated criminal defendant is under quarantine to prevent the spread of infectious disease. A contrary holding would require trial court personnel, jurors, and witnesses to be exposed to debilitating and perhaps life-threatening illness. Public health concerns trump the right to a speedy trial.

Jesse Alan Tucker appeals his conviction, by jury, of grand theft of an automobile (Pen. Code, § 487, subd. (d)(1))[1] and receiving stolen property. (§ 496, subd. (a).) The jury also found true an allegation that appellant had served a prior prison term. (§ 667.5.) Appellant was sentenced to a term of four years in state prison. He was awarded 259 days' custody credit, consisting of 173 days' actual custody and 86 days' local conduct credit. He contends the trial court violated his right to a speedy trial by continuing the trial date without his consent and without good cause. He further contends the trial court erred in calculating his local conduct credits and that he is entitled

---

[1] All statutory references are to the Penal Code.

to an additional 86 days' credit. In the unpublished portion of this opinion, we agree with the latter contention and modify the judgment to award appellant an additional 86 days of presentence local conduct credit pursuant to section 4019. As so modified, the judgment will be affirmed.

### Facts and Procedural History

Appellant does not challenge any substantive aspect of his conviction, including the substantial evidence supporting it, so it is not necessary to state the facts in detail. Briefly, on July 22, 2009, a pizza delivery person left his car running and the door unlocked while he delivered a pizza to an apartment in Santa Clarita. Appellant got into the car and drove it off while the delivery was in progress. He was arrested the next morning while carrying the key to the stolen car, credit cards issued to the delivery person and the delivery person's driver's license.

On October 22, 2009, the matter was called for trial. The prosecution was unable to proceed and requested that the matter be deemed terminated and appellant rearraigned on the existing information. Appellant, who was in custody, consented to that procedure. (§ 1387.2.) The matter was continued to November 19, 2009, with December 21, 2009, being the last day for trial.

When the matter was called for trial on December 18, 2009, appellant did not appear. Although he was not himself ill, appellant was in custody at a correctional facility that was under quarantine because a prisoner had contracted the H1N1 flu virus. Appellant's trial counsel did not waive his speedy trial rights. The trial court found "there is good cause for his failure to appear, as he is in custody and quarantined and it is out of medical necessity."

The matter was next called for trial on December 21, 2009. Appellant was again unable to appear because of the quarantine. When the case was called for trial on December 28, 2009, appellant made a motion to dismiss based on the violation of his speedy trial rights. The trial court denied the motion, noting that two prior judges found good cause based on the medical necessity of the quarantine.

Appellant was incarcerated about five weeks after the World Health Organization declared, on June 11, 2009, that a global pandemic of H1N1 influenza was underway. (Centers for Disease Control and Prevention, The 2009 H1N1 Pandemic: Summary Highlights, April 2009–April 2010 (Updated: June 16, 2010) p. 7 <http://www.cdc.gov/h1n1flu/cdcresponse.htm> [as of June 28, 2011]; hereafter, CDC Summary.) The Centers for Disease Control and Prevention (CDC) estimated that at least 55 million people

were infected with 2009 H1N1 in the United States between April and mid-December 2009. (CDC, Updated CDC Estimates of 2009 H1N1 Influenza Cases, Hospitalizations and Deaths in the United States, April 2009–April 2010 (May 14, 2010) p. 2 <http://www.cdc.gov/h1n1flu/estimates_2009_h1n1.htm> [as of June 28, 2011]; hereafter "CDC Estimates.") Although the overwhelming majority of Americans who became ill with H1N1 flu recovered without requiring medical treatment, nearly 250,000 required hospitalization during this period and more than 11,000 died from the disease. (CDC Summary, *supra*, p. 7; CDC Estimates, *supra*, p. 2.) A second wave of pandemic activity in the United States peaked during the second week of October 2009. By January 2010, influenza activity had declined to below baseline levels throughout the nation. (CDC Estimates, *supra*, p. 5.)

In May 2009, the CDC issued interim guidelines for H1N1 infection control in correctional and detention facilities. (CDC, Interim Guidance for Correctional and Detention Facilities on Novel Influenza A (H1N1) Virus (May 24, 2009) <http://www.cdc.gov/h1n1flu/guidance/correctional_facilities.htm> [as of June 28, 2011].) Although it did not specifically recommend quarantines, the CDC suggested that inmates with "influenza-like-illness" (ILI) be separated from others and restricted from moving within an institution whenever possible. (*Id.* at p. 3.) In addition, the CDC recommended that inmates with ILI be restricted from leaving the institution and from transferring to or from another institution for at least seven days after the onset of ILI symptoms. (*Ibid.*) The quarantine at issue here appears to have lasted about 10 days, from December 18 through December 28, 2009.

### Discussion

### I. Speedy Trial and Quarantine

Appellant contends the trial court violated his statutory right to a speedy trial under section 1382 because he did not waive the 60-day time limit and there was not good cause for the delay.[2] We reject this contention.

Section 1382 provides: "(a) The court, unless good cause to the contrary is shown, shall order the action to be dismissed in the following cases: [¶] . . .

---

[2] Appellant does not contend that his right to a speedy trial under the United States or California Constitution was also violated. Had those claims been made, our conclusion that appellant suffered no prejudice from the brief delay would cause us to reject them as well. (*People v. Anderson* (2001) 25 Cal.4th 543, 603 [106 Cal.Rptr.2d 575, 22 P.3d 347] [determination of federal speedy trial claim requires assessment of prejudice from delay]; *People v. Martinez* (2000) 22 Cal.4th 750, 769 [94 Cal.Rptr.2d 381, 996 P.2d 32] [demonstration of prejudice required for speedy trial claim based on Cal. Const.].)

[¶] (2) In a felony case, when a defendant is not brought to trial within 60 days of the defendant's arraignment on an indictment or information . . . ." (§ 1382, subd. (a)(2).) We review the trial court's determination that good cause existed for a continuance for abuse of discretion. (*People v. Memro* (1995) 11 Cal.4th 786, 852–853 [47 Cal.Rptr.2d 219, 905 P.2d 1305]; *Baustert v. Superior Court* (2005) 129 Cal.App.4th 1269, 1275 [29 Cal.Rptr.3d 208].) "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' (*People v. Jordan* (1986) 42 Cal.3d 308, 316 [228 Cal.Rptr. 197, 721 P.2d 79].)" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125 [36 Cal.Rptr.2d 235, 885 P.2d 1].)

■ At least one California court has recognized that a quarantine imposed to prevent the spread of an infectious disease is good cause for the delay of a trial. In *In re Venable* (1927) 86 Cal.App. 585 [261 P. 731], the Court of Appeal denied a writ of habeas corpus to a prisoner whose trial for unlawful possession of intoxicating liquor was delayed because "an epidemic of infantile paralysis was prevalent in the town wherein the sessions of the . . . court were held and . . . for that reason no juries were called during that period." (*Id.* at p. 587.) The court held that the epidemic constituted good cause for continuing the trial and that there was no "unreasonable delay in bringing the case to trial after the cessation of the epidemic." (*Id.* at pp. 587–588.) Over the years, courts in other states have confronted similar situations and have uniformly agreed that the right to a speedy trial is not violated where the trial date is delayed due to a medical quarantine. (*State v. Drewry* (2008) 2008 ME 76 [946 A.2d 981, 987] [defendant confined in a jail under infectious disease quarantine]; *People v. Goode* (N.Y.App. Div. 1995) 216 A.D.2d 413 [628 N.Y.S.2d 727, 728] [defendant incarcerated in another jurisdiction and subject to a medical quarantine]; *State v. Ibarra* (Ohio Ct.App., Dec. 22, 1988, No. 54736) 1988 WL 141170 [defendant subjected to a chicken pox quarantine]; *Capers v. U.S.* (D.C. 1979) 403 A.2d 1155 [defendant quarantined for tuberculosis treatment]; *Commonwealth v. Jailer of Allegheny County* (Pa. 1838) 7 Watts 366 [trial properly delayed where, while recovering from smallpox, the defendant's "aspect was so loathsome as to spread a general panic; and on the testimony of the physician of the prison that he might still communicate infection . . ."].)

We cannot say that the trial court abused its discretion. On December 18, appellant was not present in court. The trial court's bailiff informed the court that he was under quarantine at the facility in which he was incarcerated. Defense counsel represented to the court that he had been given the same information when he asked the bailiff about appellant's absence. The same information was apparently given to the trial court when appellant was unable

to appear on the next trial date, December 21, 2009. It was not an abuse of discretion for these trial court judges to rely on representations from their bailiffs concerning the reason for appellant's absence. Nor was it arbitrary or capricious for these trial court judges to conclude that the sheriff's department acted in good faith when it made the decision to quarantine the facility, to prevent the spread of a dangerous, infectious disease during a global pandemic. To the contrary, appellant himself confirmed that the sheriff's department had good cause to quarantine the facility when he represented that another inmate in his unit had, in fact, contracted the H1N1 flu. The quarantine was consistent with the guidelines for correctional facilities. There is no suggestion that the seven-day delay was orchestrated to benefit the prosecution or that it prejudiced the defense in any way. We conclude there was no abuse of discretion, and there was good cause for the continuance of appellant's trial.

## II.   *Local Conduct Credits*[*]

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

### *Disposition*

The judgment is modified to award appellant presentence credit totaling 345 days (173 days of actual custody credit plus 172 days of conduct credit). As so modified, the judgment is affirmed. The trial court shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

Gilbert, P. J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 28, 2011, S195339.

---

[*]See footnote, *ante*, page 1313.