Filed 5/17/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| RUBEN ELIAS,<br><br>　　　Petitioner,<br><br>　　　v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>　　　Respondent;<br><br>THE PEOPLE,<br><br>　　　Real Party in Interest. | D079425<br><br>(San Diego County<br>Super. Ct. No. SCE400093) |


ORIGINAL PROCEEDINGS in mandate.  Roderick W. Shelton, Robert O. Amador, Evan P. Kirvin, Daniel G. Lamborn, and John M. Thompson, Judges.  Petition denied.


　　　Randy Wagner, under appointment by the Court of Appeal, for Petitioner.

　　　No appearance for Respondent.

Summer Stephan, District Attorney, Linh Lam, Valerie Ryan, and Elizabeth Renner, Deputy District Attorneys, for Real Party in Interest.

I.

INTRODUCTION

Petitioner Ruben Elias is awaiting trial on charges arising from several alleged incidents of domestic violence that occurred in March and April 2020, during the early months of the COVID-19 pandemic.

In early March 2020, the Governor of California declared a state of emergency in California, and the President declared a national emergency due to the COVID-19 pandemic. Based on health recommendations, the Chief Justice of the State of California issued statewide emergency orders suspending in-person jury trials and, among other things, extending statutory deadlines for trials in criminal proceedings. The Chief Justice authorized local courts to adopt local rules to address the impact of the COVID-19 pandemic. The Presiding Judge of the San Diego Superior Court issued a general order in April 2020 closing courtrooms and extending the time period provided in Penal Code[1] section 1382 for holding criminal trials. The health and safety concerns associated with the pandemic along with public health orders from the State of California and the County of San Diego caused "substantial operational impediments for the court." The superior court issued a series of general orders that, among other things, extended the

---

[1]    Further statutory references are to the Penal Code unless otherwise stated.

time for holding criminal trials by 30 days at a time. Those orders remain in effect.[2]

Elias was arraigned on May 13, 2020 and the court held him to answer the charges against him on May 27, 2020. He was arraigned on the information in June 2020, and on an amended information in August 2020. His trial was initially set in October 2020, but it was continued several times until June 2021 based on the COVID-19 general orders and instances when Elias was in medical isolation.[3]

After the trial court granted two additional trial continuances on June 24 and July 6, 2021, and denied his motion to dismiss on August 9, 2021, Elias filed a petition for writ of habeas corpus contending the court violated his right to a speedy trial pursuant to section 1382 and the federal Constitution. We construed the petition as a petition for writ of mandate and/or prohibition requesting dismissal of the case for violation of Elias's

---

[2]     See April 25, 2022, General Order No. 042522-60 (San Diego Superior Court Online (2022) <https://www.sdcourt.ca.gov/sites/default/files/ SDCOURT/GENERALINFORMATION/COVID-19INFO/scsd_general_order_ 042522-60.pdf> [as of May 17, 2022], archived at <https://perma.cc/9MWF-FCTS>), March 24, 2022, General Order No. 032422-58 (*id*., <https://www.sdcourt.ca.gov/sites/default/files/SDCOURT/GENERALINFOR MATION/COVID-19INFO/scsd_general_order_032422-58.pdf> [as of May 17, 2022], archived at <https://perma.cc/3PPC-Z6TR>), February 23, 2022, General Order No. 022322-52 (*id*., <https://www.sdcourt.ca.gov/sites/default/ files/SDCOURT/GENERALINFORMATION/COVID-19INFO/scsd_general_ order_022322-52.pdf> [as of May 17, 2022], archived at <https://perma.cc/24KY-BFXN>), and January 24, 2022, General Order No. 012422-48 (*id*., <https://www.sdcourt.ca.gov/sites/default/files/SDCOURT/ GENERALINFORMATION/COVID-19INFO/scsd_general_order_012422-48.pdf> [as of May 17, 2022], archived at <https://perma.cc/9G2B-SHFG>.)

[3]     Elias does not challenge these earlier continuances in this proceeding.

speedy trial right, ordered respondent to show cause why relief should not be granted, and stayed all trial court proceedings pending further order of this court.[4] We have considered the return of the real party in interest, the People, Elias's reply, and oral argument.

There is no question that the realities of the pandemic shutdowns and related limitations have substantially inhibited the ability of the court system to bring criminal cases to trial within normal statutory time frames. Hundreds of in-custody criminal defendants are still awaiting trial. Given the unique and unprecedented circumstances caused by the global public health emergency, courts must exercise their inherent power to manage and prioritize their cases to work through the backlog. The record before us shows the court did just that. We conclude the court did not abuse its discretion in finding good cause to grant the continuances or in denying Elias's motion to dismiss. We, therefore, deny the petition.

## II.

## BACKGROUND

A.    *Factual Background*[5]

Elias started dating D.M. in October 2019 and they began living together shortly thereafter. Their relationship was punctuated by domestic violence over four of the six months they dated. In January 2020, Elias struck D.M. in the stomach, arms, and legs after learning that they both

---

[4]    By the same order, we denied Elias's petition to set aside the information based on a claim of ineffective assistance of counsel at the preliminary hearing. (§§ 995, 1510; *Ghent v. Superior Court* (1979) 90 Cal.App.3d 944, 950.)

[5]    We draw the factual background from the evidence presented at the preliminary hearing.

4

contracted a sexually transmitted disease. In February 2020, Elias again struck her in the stomach, arms, and legs while they were inside a vehicle. When they got to their residence, Elias struck D.M. on the back of the head and she lost consciousness. She awoke in a bathtub with Elias leaning over her and crying. He said he thought he had killed her.

During an argument in March 2020, Elias grabbed D.M. by the throat and applied so much pressure that she saw dots, became disoriented, felt she was blacking out, and urinated herself. She had difficulty breathing and feared for her life.

D.M. did not report the violent incidents because Elias threatened her. He said he had killed someone before and he had gotten away with it. He also said his family members, who were gangsters, would kill her and her children if he was arrested. He said he would do anything to not go back to prison and he would rather kill her than go to jail.

In early April 2020, they again argued about the sexually transmitted disease and about D.M.'s ex-boyfriend. Elias struck D.M. multiple times with the wooden handle of a plunger. D.M. had linear marks and bruises all over her body consistent with a plunger handle. She also had a scrape on her forearm she said she sustained when the plunger handle broke. She did not report the incident because Elias threatened to kill her if she reported anything.

On April 29, 2020, the couple argued again about the same issues. Elias struck D.M. in the back of her head causing her to fall forward to the bathroom floor. Elias forced her head toward the water in the toilet bowl, saying he was going to drown her. During the struggle, D.M.'s face hit the porcelain toilet bowl and a substantial piece of her tooth was knocked out. Elias said, " 'Look what you made me do.' " He made D.M. get the tooth fixed

5

because he could not be seen with a girlfriend who was missing a tooth. D.M. had constant pain on the side of her face after this incident and she could not eat due to the pain.

Elias said he would hurt her so badly that she would not be able to walk again and that he would make her disappear. She decided to report the abuse because she was afraid that she would not be able to care for her children if he followed through on his threats. D.M. went to the police on May 4, 2020, and reported the abuse.

B.    *Procedural Background*

Elias is charged with three counts of corporal injury to a spouse and/or roommate (§ 273.5, subd. (a); counts 1 [incident between 3/1-31/20], 4 [incident between 4/1-28/20], and 6 [4/29/20 incident]), three counts of assault by means likely to produce great bodily injury (§ 245, subd. (a)(4); counts 2 [incident between 3/1-31/20], 3 [incident between 4/1-28/20], and 5 [4/29/20 incident]), and one count of making a criminal threat (§ 422; count 7 [4/29/20 incident]). The third amended information alleges he committed counts 3 through 6 while he was on state prison parole following a term of imprisonment for a 2011 conviction of serious or violent felony (§§ 206 [torture], 1203.085, subd. (a)) and that in committing counts 5 and 6, he inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)). It also alleges he was convicted of a serious felony prior (§§ 667, subd. (a)(1), 668, and 1192.7, subd. (c)) and prior strike convictions (§§ 667, subds. (b)–(i), 1170.12, and 668).

Elias was arraigned on May 13, 2020. The court held Elias to answer all counts and allegations after the preliminary hearing on May 27, 2020. He was arraigned on the information in June 2020 and on an amended information in August 2020.

After several continuances based on the superior court's emergency general orders and Elias's unavailability due to medical isolation, the matter came on for trial call on June 17, 2021. The court continued the trial call because Elias did not consent to appear in a closed remote proceeding.

Elias appeared on June 21, 2021, and his defense attorney answered ready for trial. The prosecutor requested either a 30-day continuance based on the court's general order, or a short continuance within the prosecutor's trailing window because the People were not ready and planned to subpoena witnesses that day.

The court explained to Elias that if a courtroom was not available it could continue the trial 30 days under the general orders. However, the court stated a courtroom was available that day, so it continued the matter three days at the request of the prosecutor.

The prosecutor issued trial subpoenas pursuant to the standard office procedures and learned that same day that the officer who took D.M.'s statements and documented her injuries had been out of state on vacation since the beginning of June and would not return until after July 4, 2021. The prosecutor moved to continue the trial pursuant to section 1050 based on the unavailability of a necessary and material witness.

On June 24, 2021, over the defendant's objection, the court granted the People's continuance request due to witness unavailability. Defense counsel advised the court that she would be unavailable after July 12 and questioned whether trial could be completed before that date. The court set the new trial for July 6, 2021, saying they would deal with the scheduling issue then.

On July 6, 2021, defense counsel answered ready before the Supervising Judge in the criminal master calendar department. The prosecutor asked to trail the case saying the People were not ready. The

7

prosecutor estimated a one-week trial from when the witnesses would be available, which she stated was not that day. Defense counsel objected to trailing, saying she did not want to extend the case. Defense counsel said she was scheduled for a vacation between July 13 and 20, 2021. The Supervising Judge denied the People's request to trail and sent the matter to a courtroom.

The assigned trial judge, however, stated it had only two and a half days available for a trial within the next week to try a case with a one-week estimate. The court commented that it did not know why the case was sent to that department because it could not try the case before defense counsel's scheduled vacation.

Defense counsel moved to release Elias or to dismiss the case. The court advised Elias that he was in the same spot as about 400 other in-custody individuals awaiting trial. The court commented, "The pandemic has caused a significant disaster for the courts and, more importantly, for criminal defendants" based on delays due to the pandemic, lack of courtrooms, and lack of jurors.

When the court suggested it would find his attorney was not ready because trial could not be completed before her vacation, defense counsel objected. She emphasized that she was ready to start trial and had been ready for trial since June. She agreed it was not possible to complete the trial within the assigned department's schedule that week, but she could not say it would be impossible to complete the trial in another department. Defense counsel also said the prosecution was not ready because it did not have its witnesses. When the court inquired, the prosecutor said the witnesses were under subpoena and she could start trial, but that she told the witnesses it was unlikely the trial would go forward that day.

8

After a discussion off the record, the court continued the matter pursuant to the then-applicable general order, to August 9, 2021, plus 11 days. Defense counsel did not object to this trial date. Subsequent general orders further extended the trial deadline under section 1382.

By the end of July 2021, the court resumed using all of its courtrooms after physical distancing requirements were lifted. Jury summonses were gradually brought back up to pre-pandemic levels.

Shortly before the continued trial date, defense counsel filed a motion asking the court to dismiss the charges and allegations against Elias in the furtherance of justice pursuant to sections 1385 and 1049.5.[6] Defense counsel argued that the People improperly delayed in preparing the case for trial noting the prosecution only recently produced discovery including jail calls, witness interviews, photographs, and e-discovery in July 2021. Defense counsel stated the discovery was "overwhelming" and, due to the delay in preparing the prosecution's case, Elias was faced with either waiving time to allow his attorney to digest the discovery or proceed with trial to preserve his speedy trial rights.

The People opposed the motion stating they provided the defense with jail calls more than 30 days before trial and identified those they planned to

---

[6]     Section 1049.5 provides in pertinent part, "In felony cases, the court shall set a date for trial which is within 60 days of the defendant's arraignment in the superior court unless, upon a showing of good cause as prescribed in Section 1050, the court lengthens the time."

Section 1385, subdivision (a) provides in pertinent part that a judge may "in furtherance of justice, order an action to be dismissed." A "defendant has no right to make a motion, and the trial court has no obligation to make a ruling" under section 1385. (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) However, the defendant "does have the right to 'invite the court to exercise its power by an application to strike a count or allegation of an accusatory pleading . . . .' " (*Ibid*.)

introduce. The People provided transcripts of previously disclosed calls along with demonstrative aids they planned to use at trial and information about areas of anticipated expert testimony. The People also provided new information provided by the victim about continuing medical treatment.

The matter was called for trial on August 9, 2021. The court conducted a hearing on Elias's motion to relieve his counsel, which the court denied. The court indicated it would allow Elias to represent himself but agreed to first hear defense counsel's motion to dismiss. Defense counsel argued the case was delayed not only due to the pandemic, but also because the prosecution was not diligent in preparing the case for trial. She recited the prior delays in June and July and the recent discovery, saying it appeared the People did not prepare the case until after July 6. The prosecutor stated they produced newly acquired information and medical records from the victim regarding her injuries, citing their continued obligation under the discovery rules. The only things that were disclosed within the 30-day window before trial were curriculum vitaes for experts. The prosecutor noted the court found good cause to continue the matter previously and stated it would not be in the furtherance of justice to dismiss this very serious case. The court denied the motion.

The court discussed Elias's request to represent himself and whether he would waive time to prepare for trial. The matter was continued to the following day to allow Elias time to consider the representation issue. The following day, Elias withdrew his request to represent himself. The court granted a trial continuance in light of the new discovery to September 7,

2021. The matter was continued several more times for good cause because Elias was in medical isolation. In the interim, Elias filed this writ petition.[7]

III.

DISCUSSION

A.   *General Legal Principles*

" 'The right to a speedy trial is a fundamental right guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution. [Citation.] The purpose of the speedy trial right is "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." [Citation.] 'To implement an accused's constitutional right to a speedy trial, the Legislature enacted section 1382." ' " (*Hernandez-Valenzuela v. Superior Court* (2022) 75 Cal.App.5th 1108, 1122; see *Barker v. Wingo* (1972) 407 U.S. 514, 532 (*Barker*); *People v. Martinez* (2000) 22 Cal.4th 750, 754, 768 (*Martinez*).)

"Under the *state* Constitution, . . . the showing that the defendant must make depends upon whether the allegedly unreasonable delay occurred before or after the defendant's statutory speedy trial rights attached. The statutory speedy trial provisions, . . . sections 1381 to 1389.8, are 'supplementary to and a construction of' the state constitutional speedy trial guarantee. [Citations.] . . . No affirmative showing of prejudice is necessary to obtain a dismissal for violation of the state constitutional speedy trial right *as construed and implemented by statute.* [Citation.] Instead, 'an unexcused delay beyond the time fixed in section 1382 . . . without

---

[7]   The court relieved Elias's former attorney on October 4, 2021 and appointed a new attorney the following day.

defendant's consent entitles the defendant to a dismissal.' " (*Martinez, supra*, 22 Cal.4th at p. 766.)

Pursuant to sections 1049.5 and 1382, the defendant in a felony case must be brought to trial within 60 days of his arraignment on an indictment or information unless, on a good cause showing, the court lengthens the time. (§§ 1049.5, 1382, subd. (a)(2).) A trial court may grant a trial continuance "only upon a showing of good cause." (§1050, subd. (e).)

"[S]ection 1382 provides that an action shall be dismissed if trial is not commenced within the statutory time limits 'unless good cause to the contrary is shown.' ([]§ 1382, subd. (a).) 'The cases recognize that, as a general matter, a trial court "has broad discretion to determine whether good cause exists to grant a continuance of the trial" [citation], and that, in reviewing a trial court's good-cause determination, an appellate court applies an "abuse of discretion" standard.' (*People v. Sutton* (2010) 48 Cal.4th 533, 546.) '[I]n making its good-cause determination, a trial court must consider all of the relevant circumstances of the particular case, "applying principles of common sense to the totality of circumstances . . . ." ' " (*Stanley v. Superior Court* (2020) 50 Cal.App.5th 164, 169 (*Stanley*).) "Discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered." (*In re Lawanda L.* (1986) 178 Cal.App.3d 423, 428.)

"Section 1385 allows the court to dismiss an action 'in furtherance of justice.' To give effect to this language in section 1385, courts must balance the constitutional rights of the defendant against the interests of society as represented by the People. Society has a legitimate interest in the prosecution of crimes in accordance with fair and lawful procedures. Therefore, dismissing a criminal complaint under section 1385 in a case where there is probable cause that the defendant committed the offense is a

disfavored practice among appellate courts." (*People v. Henderson* (2004) 115 Cal.App.4th 922, 936, fns. omitted.)  We review a court's determination of whether to dismiss under section 1385 for abuse of discretion.  (*People v. Halim* (2017) 14 Cal.App.5th 632, 649, citing *Carmony, supra*, 33 Cal.4th at p. 374.)

"For the *federal* Constitution's speedy trial right, the United States Supreme Court has articulated a balancing test that requires consideration of the length of the delay, the reason for the delay, the defendant's assertion of the right, and prejudice to the defense caused by the delay." (*Martinez, supra,* 22 Cal.4th at p. 755, citing *Barker, supra*, 407 U.S. at p. 530.)  When the delay is of sufficient length to be presumptively prejudicial, any actual prejudice is balanced with the other *Barker* factors, including the justification for the delay.  (*Serna v. Superior Court* (1985) 40 Cal.3d 239, 252.)

B.      *June Continuance for Unavailable Witness*

A trial continuance due to a witness's unavailability may be considered good cause if "(1) the party seeking the delay has exercised due diligence in securing the attendance of the witness at trial by legal means, (2) the testimony of the witness is material, (3) the testimony is not merely cumulative, (4) the attendance of the witness can be obtained within a reasonable time, and (5) the facts about which the witness is expected to testify cannot otherwise be proven." (*Baustert v. Superior Court* (2005) 129 Cal.App.4th 1269, 1277, citing *Owens v. Superior Court* (1980) 28 Cal.3d 238, 250–251 (*Owens*).)

The officer who took D.M.'s statements and documented her injuries was undoubtedly an important material witness, particularly since D.M. apparently recanted her testimony.  Once the prosecutor learned the witness

was out of state, she immediately moved to continue the trial approximately two weeks so he could testify.

Elias contends the prosecutor unreasonably delayed in issuing the subpoena for the officer. Section 1328 "does not mandate service within a set number of days before a witness may be compelled to appear in court"; indeed, the "Legislature anticipated that service of a subpoena on a peace officer frequently may be on short notice and that there will be times when an officer will not be available either for service or to appear on the scheduled date." (*People v. Shane* (2004) 115 Cal.App.4th 196, 203.) Although "[t]he time to ascertain the availability of a police officer/witness is not on the date set for trial" (*Brown v. Superior Court* (1987) 189 Cal.App.3d 260, 265), the determination of diligence is fact-specific and made on a case-by-case basis. (*Owens*, *supra*, 28 Cal.3d at p. 250, superseded by statute on other grounds as stated in *People v. Perez* (1989) 207 Cal.App.3d 431, 436; *Shane*, at p. 205 [unreasonable to require a prosecutor to anticipate an officer's lengthy absence]; *Gaines v. Municipal Court* (1980) 101 Cal.App.3d 556, 560–561 [a subpoenaed material witness's failure to appear for trial may constitute good cause for a continuance under section 1382].)

The trial in this case was continued multiple times for more than a year due primarily to the COVID-19 pandemic. Once it became clear that trial would finally proceed, we cannot say the prosecutor's service of the subpoena on June 21, 2021, was improper. Given the fact that the witness had been out of state since the first of June 2021, we will not speculate about whether his availability would have changed if the prosecutor issued the subpoena a week or two earlier. The court did not abuse its discretion in finding good cause to grant the request for a reasonable continuance based on witness unavailability.

14

C.    *July Continuance Based on General Orders.*

Elias next contends the court abused its discretion in granting a continuance on July 6, 2021, based on the court's general orders because a courtroom was available that day and because the next hearing was more than 30 days later. We disagree.

When the parties arrived in the assigned trial department, both sides answered ready. Despite allegations that the prosecution was not ready, the prosecutor stated she could start trial if necessary. However, as Elias acknowledged in his petition, the court told the parties they could not select a jury until the following day and the court had only limited availability for trial that week. After considering the arguments of counsel and its limited availability to try this case, the court ultimately determined it should continue the matter based on the existing general order, which extended the time for trial by 30 days. The court set a new trial date, without further objection from the defense, and stated there were 11 days left for trial. A subsequent general order again extended the time 30 additional days.

The court's order continuing the matter based on the general order must be understood within the context of the issues facing the court as a result of the COVID-19 pandemic. A general order issued by the San Diego County Superior Court Presiding Judge explained that the San Diego Superior Court's ability to conduct in-person jury trials was "severely limited" between May 26, 2020, through June 15, 2021 and the resumption of jury trials had been "a slow and cumbersome process" due to the numerous federal, state, and local public health orders issued in response to the COVID-19 pandemic, which "affected the court's ability to bring in large numbers of jurors for multiple trials at a given time and its ability to coordinate and manage jurors' movements around the courthouses." The

15

exceptional circumstances created by the COVID-19 pandemic "resulted in approximately 2,700 criminal cases with pending trial dates through August 31, 2021, including approximately 500 cases involving in-custody defendants. . . . Even if the court were operating at its full pre-pandemic capacity of 70–90 jury trials per month (including criminal and civil), it would still take a significant amount of time to get through this number of cases." This is consistent with the court's comments to Elias explaining that hundreds of other in-custody defendants were also awaiting trial due to delays caused by the pandemic and challenges regarding the lack of courtrooms and jurors.

The general order acknowledged the need to prioritize in-custody criminal matters, particularly when the time provided by section 1382 had been extended by a judicial emergency order. However, the general order also stated that "in exercising the court's inherent judicial authority to fairly and efficiently administer all pending judicial proceedings, the court must exercise its discretion to prioritize cases based on its determination of the interests of justice and the caseload before it." It would not be unreasonable for the court to determine its judicial resources could be better used to start and complete a case with a shorter trial estimate, given its limited availability.

Under the circumstances, we cannot fault the court for its determination that there was good cause to continue the matter based on the general orders. "It is well established, in California and elsewhere, that a court has both the inherent authority and responsibility to fairly and efficiently administer all of the judicial proceedings that are pending before it, and that one important element of a court's inherent judicial authority in this regard is 'the power . . . to control the disposition of the causes on its

16

docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.' " (*People v. Engram* (2010) 50 Cal.4th 1131, 1146.)

The backlog here was not a routine or chronic condition for the court. The COVID-19 pandemic has been a " 'unique, nonrecurring event[]' " which " 'ha[s] produced an inordinate number of cases for court disposition.' " (*People v. Johnson* (1980) 26 Cal.3d 557, 571.) Although the continuances in this case have been lengthy, the COVID-19 pandemic has been "of such severity as to justify" the continuance. (*Stanley, supra*, 50 Cal.App.5th at p. 169.)

D.    *Denial of Motion to Dismiss*

At the continued trial date on August 9, 2021, the court heard and considered the defense motion to dismiss. We conclude the court did not abuse its discretion in denying the motion.

First, there was no violation of Elias's statutory right to speedy trial. The series of emergency orders from the Chief Justice and the San Diego Superior Court, which remain in effect, have extended the section 1382 period to commence trials for criminal defendants due to the COVID-19 pandemic. (Gov. Code, § 68115, subd. (a)(5) and (10); *People v. Rubaum* (1980) 110 Cal.App.3d 930, 934 [showing of good cause for continuance is not required if the statutory time has not expired].) Therefore, the time to bring Elias to trial has not expired. Additionally, as we have concluded, the court did not abuse its discretion in determining that good cause existed to continue the trial in June and July 2021 due to witness unavailability and the court's general orders.

Second, dismissal was not warranted under the federal Constitution. Delays approaching one year after accusation are generally presumptively prejudicial. (*Doggett v. United States* (1992) 505 U.S. 647, 652, fn. 1 (*Doggett*).) "Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." (*Barker, supra*, 407 U.S. at pp. 530–531.)

Trial was continued in this case for reasons undisputedly related to the COVID-19 pandemic for at least 13 out of 15 months from the time Elias was held to answer at the end of May 2020 until August 2021 when the court denied the motion to dismiss. Courts have recognized that "[h]ealth quarantines to prevent the spread of infectious diseases have long been recognized as good cause for continuing a trial date." (*Stanley, supra*, 50 Cal.App.5th at p. 169, citing *In re Venable* (1927) 86 Cal.App. 585, 587 and *People v. Tucker* (2011) 196 Cal.App.4th 1313, 1315, 1318.) " 'A contrary holding would require trial court personnel, jurors, and witnesses to be exposed to debilitating and perhaps life-threatening illness. Public health concerns trump the right to a speedy trial.' " (*Stanley,* at p. 169.) We acknowledge the "unfortunate hardship to defendant" from the delays in this case, but, as in *Stanley*, "neither the prosecution nor the court is responsible for the emergency that has overwhelmed the nation and much of the world." (*Id.* at p. 170.) Any delay attributable to an unavailable witness or scheduling issues was limited to a few weeks.

Even if we were convinced that the delays in this case give rise to a presumption of prejudice to trigger balancing the *Barker* factors, we conclude there was no violation of Elias's Sixth Amendment speedy trial right.

18

The reason for delay, *Barker*'s second factor, must also be considered in context. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." (*Barker, supra*, 407 U.S. at p. 531, fn. omitted.) We review trial court determinations on this issue with considerable deference. (*Doggett, supra*, 505 U.S. at p. 652.)

Elias suggests the prosecution intentionally or negligently delayed trial preparation citing not only a delay in subpoenaing a material witness, but also the production of discovery after the July 6 continuance while defense counsel was on vacation. The prosecutor stated that much of the discovery was previously provided to the defense and the remaining material was new information the People received within 30 days before trial, including new information from the victim regarding additional injuries.

As we have already discussed, the delays in this case were for valid reasons. After a year of continuances based on the COVID-19 pandemic, the court found good cause to continue the trial from June to July 2021 based on the unavailability of the material witness, and from July to August based on the court's availability and the general orders. The court made no findings of negligence on the part of the prosecution with respect to either the continuances or the discovery issue. We will not, on this record, presume either negligent or deliberate delay by the People.

Elias objected to the trial continuances, a factor that weighs in his favor. However, he has not shown actual prejudice or impairment of his

19

ability to present a defense such as the loss of exculpatory evidence or dimming memories.  Although he has had a lengthy incarceration during the pendency of his unresolved criminal charges, he is in the same position as hundreds of other in-custody defendants awaiting trial due to COVID-19 pandemic delays.  Lengthy pretrial incarceration " ' "unenhanced by tangible impairment of the defense function and unsupported by a better showing on the other [*Barker*] factors than was made here, does not alone make out a deprivation of the right to a speedy trial." ' " (*People v. Bradley* (2020) 51 Cal.App.5th 32, 43.)

IV

DISPOSITION

The petition for writ of mandate is denied.  The stay of the trial court proceedings is lifted.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.