Filed 5/11/23  P. v. Linthecome CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G061126 |
| v. | (Super. Ct. No. P04749) |
| MARCUS LEON LINTHECOME, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Michael J. Cassidy and Nick A. Dourbetas, Judges, and Michele Bell, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

David Zarmi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General and Nora S. Weyl, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

The trial court found defendant Marcus Leon Linthecome in violation of the terms and conditions of his parole. Appointed appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), setting forth the facts of the case and requesting we review the entire record. Pursuant to *Anders v. California* (1967) 386 U.S. 738, appellate counsel also identified two potential issues to assist in our independent review. Linthecome was provided 30 days to file his own written argument, but he did not do so.

After reviewing the record, we determined one of the potential issues identified by appellate counsel constituted an arguable issue. We requested the parties submit letter briefs as to whether the trial court had jurisdiction at the parole revocation hearing to consider the propriety of the Static-99R score previously assigned to Linthecome by the California Department of Corrections and Rehabilitation (CDCR), and if so, was the issue properly raised for the trial court's consideration. The Attorney General submitted a letter brief indicating a trial court may have the authority to consider the propriety of a Static-99R score in certain circumstances, but the appropriateness of Linthecome's score was not properly raised below. We agree with the Attorney General.

We have examined the entire record, appointed counsel's *Wende/Anders* brief, as well as respondent's letter brief, and we find no other reasonably issue. (*Wende, supra,* 25 Cal.3d 436.) We therefore affirm.

## FACTS AND PROCEDURAL BACKGROUND

In December 2021, a petition for revocation of parole was filed, alleging Linthecome violated his parole by removing his global positioning system (GPS) tracking device. On December 10, 2021, the public defender's office was appointed to represent Linthecome, he was arraigned on the petition, and entered a denial of the allegation. The

2

parole revocation hearing was set for January 11, 2022. On that date, Linthecome answered ready, however, the prosecutor moved to continue the hearing due to "witness availability"; the trial court, finding good cause, continued the matter over Linthecome's objection. The hearing was continued to January 18, 2022, which the parties agreed was the 45th day[1] for the hearing.

Linthecome was not transported to the courthouse for the revocation hearing on January 18. Instead, Linthecome and his counsel appeared via remote video. The court received a declaration by a doctor with the Orange County Health Care Agency (Declaration), stating Linthecome "tested positive for COVID on January 17 and the earliest he would be able to be transported to Court is January 28." Linthecome's trial counsel noted January 18 was the 45th day for the revocation hearing, Linthecome had not waived time, and he was not waiving his right to be physically present for the hearing. The trial court denied counsel's request for Linthecome's release on his own recognizance as well as a motion to dismiss. The matter was sent to another courtroom for the parole revocation hearing.

When the matter was called by a different judge later that day, Linthecome's counsel renewed his motion to dismiss and request to release Linthecome on his own recognizance. Both of which were denied. The court noted it had good cause to continue the parole revocation hearing to January 28, 2022, based on the "[D]eclaration and previous judicial orders".[2]

---

[1] We believe the parties were referencing Penal Code section 3044, subdivision (a)(2) in focusing on the 45th day. Section 3044, subdivision (a)(2) provides: "[A]n evidentiary revocation hearing" is to be heard "no later than 45 days following [a parolee's] arrest for violation of parole." All further statutory references are to the Penal Code unless otherwise noted.

[2] On November 18, 2022, the court reporter submitted a declaration to this court indicating the reporter's transcript for this hearing could not be produced. Thus, we draw these facts from the trial court's minutes of this hearing.

On January 28, 2022, the trial court heard the parole revocation hearing. The parole revocation report accompanying the revocation petition noted Linthecome was a sex offender as defined by section 290, his Static-99R score was marked as "high," and he was "classified as a high-risk sex offender with a Static[-]99[R] score of 5."

At the outset of the hearing, Linthecome told the trial court he believed the CDCR had miscalculated his Static-99R score and therefore had "miscategorized" him as a high-risk offender. Linthecome believed if he had been correctly categorized, "he . . . would have been eligible for a discharge at six months out from his release date," which would have been "April 2021," well before the parole violation. Based on this miscategorization, Linthecome's counsel requested the trial court discharge Linthecome from parole. The prosecution objected on the ground no formal motion had been filed. Ultimately, the trial court determined it lacked jurisdiction to hear Linthecome's contention his Static-99R was miscalculated and had insufficient information to rule on such.

The court conducted a contested parole revocation hearing. At the prosecution's request, the court took judicial notice of the entire contents of two files, which reflected in October 2020, Linthecome was convicted of violating section 422, was sentenced, and released on parole.[3]

Linthecome's parole agent Millicent Golz testified. On September 28, 2021, Golz met Linthecome in person, went over his terms and conditions of parole, which Linthecome signed, and the GPS unit was placed on Linthecome. One of Linthecome's terms was that he participate in "continuous electronic monitoring or GPS technology" and he was not to tamper or remove his GPS device.

Golz recalled the initial meeting with Linthecome took "[a] while" as Linthecome "would get upset because he didn't want to go over his Conditions of

_____

[3] These two files are not a part of the record on appeal.

4

Parole." Linthecome "voiced his position" he should not be on parole to Golz during this first meeting and every meeting they had thereafter. Golz explained Linthecome's parole dates were "calculated by Rancho and Sacramento" and she had nothing to do with calculating them.

On November 28, 2021, Golz received a master tamper alert notification indicating Linthecome's GPS device had been "cut, and . . . removed from [his] leg." Golz went to the location of the GPS unit and found it in the street with its straps cut. Linthecome was not located in the nearby area. A couple of days later, Linthecome appeared at the parole office and told officers he had removed the GPS unit and was not subject to GPS supervision; he also stated he "'"had to take care of some family business and . . . knew Ms. Golz would not let [him] go."'"

The trial court revoked Linthecome's parole and ordered him to serve 120 days in the county jail. Linthecome appealed.


DISCUSSION

In the *Wende/Anders* brief, appellate counsel suggests two issues for our consideration. The first is whether the revocation proceedings should have been dismissed because the trial court continued the hearing beyond the statutory timeline of 45 days over Linthecome's objection, and the second is whether the propriety of Linthecome's Static-99R score, assigned to him by the CDCR, could be challenged in these proceedings.

Although trial counsel asserted Linthecome had a right to a revocation hearing within 45 days of his arrest on the alleged parole violation, this assertion was based on a misapplication of section 3044. (See *People v. DeLeon* (2017) 3 Cal.5th 640 [ § 3044 does not apply to parole revocation proceedings conducted in superior court.].) Instead, a "revocation hearing must be tendered within a reasonable time after the parolee is taken into custody." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 488.) Here, the

5

parole revocation hearing was set by agreement of counsel for January 18, 2022, which appears from the record to be the 46th day after Linthecome's arrest on the parole violation.[4]  No objection as to the January 18 setting was raised below.

Notwithstanding the absence of a 45-day statutory timeline, to continue "any hearing in a criminal proceeding," there must be a showing of good cause.  (§ 1050, subds. (b) and (e).)  A trial court's finding of good cause for a continuance is subject to review under an abuse of discretion standard.  (*People v. Rhoades* (2019) 8 Cal.5th 393, 451.)

Here, the trial court based its finding of good cause on the declaration of the doctor who indicated Linthecome had tested positive for COVID and could not be physically transported to court on the date set for hearing.  "Health quarantines to prevent the spread of infectious diseases have long been recognized as good cause for continuing a trial date."  (*People v. Breceda* (2022) 76 Cal.App.5th 71, 91; *Stanley v. Superior Court* (2011) 50 Cal.App.5th 164, 169.)  Indeed, good cause exists when an incarcerated defendant is "under quarantine to prevent the spread of infectious disease."  (*People v. Tucker* (2011) 196 Cal.App.4th 1313, 1314.)  Considering the information before the trial court regarding Linthecome's health status, we cannot say the trial court abused its discretion in finding good cause to continue the parole revocation hearing.

Nevertheless, even if the granting of a continuance amounts to an abuse of discretion, Linthecome has failed to demonstrate any prejudice.  Prejudice is usually absent when the revocation hearing is held within a reasonable time.  (*People v. Johnson* (2013) 218 Cal.App.4th 938, 943.)  Here, the revocation hearing was held on the first and earliest date Linthecome was medically cleared to come to court.  The record is devoid of any prejudice suffered by Linthecome as a result of the continuance.

---

[4] Linthecome was arrested on the parole violation on December 3, 2021.  The 45th day fell on January 17, 2022, Martin Luther King, Jr., Day, a state court holiday.

6

We requested the parties brief the issue of whether Linthecome could challenge the propriety of his assigned Static-99R score in these proceedings. In response to our request, the Attorney General acknowledged a trial court may have authority to "review the propriety of a Static-99[R] score" at a parole revocation hearing under section 1203.2, but only within certain limits. However, the Attorney General also argued the record before us did not support reversal of the trial court's finding. We agree with the Attorney General.

Section 1203.2 "pertains to proceedings relating to persons on several different types of supervision (i.e., probation, parole, PRCS [postrelease community supervision], and mandatory supervision)." (*People v. Johnson* (2020) 45 Cal.App.5th 379, 394 (*Johnson*).) In *Johnson*, the defendant presented evidence he had been subjected to parole supervision because the CDCR assigned him a Static-99R score of four, which categorized him as a "high risk sex offender." (*Johnson*, *supra*, 45 Cal.App.5th at p. 387.) The CDCR subsequently determined the defendant's score should have been two, which would not subject him to parole supervision, but rather supervision under PRCS. (*Ibid.*) Because of this misclassification, the defendant argued parole did not have jurisdiction over him. (*Id.* at p. 388.) He moved to dismiss his pending parole revocation petition and requested the court order him to report to PRCS supervision. (*Ibid*.) In upholding the trial court's decision to consider the defendant's requests, the Court of Appeal relied on the trial court's authority under section 1203.2, subdivision (b)(1) to "'modify . . . supervision of the person.' [Citation.]" (*Johnson, supra,* 45 Cal.App.5th at pp. 399-400.) Pursuant to section 1203.2, subdivision (b)(1), the trial court had the authority in a parole revocation hearing "to consider the issue of whether the defendant was improperly placed on parole supervision rather than PRCS and, if appropriate, to order that supervision be transferred from parole to PRCS." (*Johnson, supra,* 45 Cal.App.5th at p. 402.)

7

However, unlike *Johnson*, no evidence was presented here challenging the accuracy or calculation of the Static-99R score the CDCR had attributed to Linthecome. Besides Linthecome's statements the CDCR had made a mistake in identifying his Static-99R score, no evidence was presented challenging the accuracy or calculation of such. His statements, by themselves, were insufficient to warrant any action from the court. Additionally, Linthecome's request to terminate his parole because he believed he had been misclassified was a remedy the trial court was not authorized to do under section 1203.2. (§ 1203.2, subd. (a); *Johnson, supra,* 45 Cal.App.5th at pp. 396-397 ["'the court shall not terminate parole pursuant to [section 1203.2]'"].)

We have otherwise reviewed the record in accordance with our obligations under *Wende* and *Anders*, and we find no other arguable issues on appeal. (*People v. Kelly* (2006) 40 Cal.4th 106, 110, 120, 124.)

DISPOSITION

The judgment is affirmed.

MOTOIKE, J.

WE CONCUR:

O'LEARY, P.J.

GOETHALS, J.

8