Defendant filed an opening brief.
The People filed a respondent's brief.
Defendant filed a reply brief.
*5 DISCUSSION
A. Standard of review applicable to motions to suppress.
"[The] standard of review on appeal from the denial of a motion to suppress is well established. We defer to the trial court's factual findings where supported by substantial evidence, but we must exercise our independent judgment to determine whether, on the facts found, the search and seizure was reasonable under the Fourth Amendment standards of reasonableness. [Citation.]" ( *187 People v. Avila (1997) 58 Cal.App.4th 1069, 1073-74, 68 Cal.Rptr.2d 432.)
In People v. Leyba (1981) 29 Cal.3d 591, 596-98, 174 Cal.Rptr. 867, 629 P.2d 961, the California Supreme Court elaborated on the standard:
In People v. Lawler (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621], we discussed the two-step process by which a superior court rules on a motion to suppress evidence under section 1538.5, and the different standard by which an appellate court reviews each of those steps. In the first step the trial court must "find the facts" relating to the challenged search or seizure: e.g., it must decide what the officer actually perceived, or knew, or believed, and what action he took in response. These are traditional questions of fact, and the statute vests the superior court with the power to decide them. ( Pen. Code, § 1538.5, subd. (i).) Accordingly, we reaffirmed in Lawler ( at p. 160 [107 Cal.Rptr. 13, 507 P.2d 621] ) that for the purpose of finding those facts "the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence."
No less important, however, is the second step of the process. As we observed in Lawler , "The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution." ( Ibid . ) Because "that issue is a question of law," the appellate court is not bound by the substantial evidence standard in reviewing the trial court's decision thereon. Rather, we explained, in such review it is "the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." ( Ibid . ) On that issue, in short, the appellate court exercises its independent judgment.
An appellate court implies "all findings necessary to support the judgment, and [its] review is limited to whether there is substantial evidence in the record to support these implied findings." ( *6 People v. Francis (2002) 98 Cal.App.4th 873, 878, 120 Cal.Rptr.2d 90.) The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment. ( Sammis v. Stafford (1996) 48 Cal.App.4th 1935, 1942, 56 Cal.Rptr.2d 589.) The doctrine is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error. ( In re Marriage of Arceneaux (1990) 51 Cal.3d 1130, 1133, 275 Cal.Rptr. 797, 800 P.2d 1227 ; Denham v. Superior Court (1970) 2 Cal.3d 557, 564, 86 Cal.Rptr. 65, 468 P.2d 193 ; Maria P. v. Riles (1987) 43 Cal.3d 1281, 1295, 240 Cal.Rptr. 872, 743 P.2d 932.)
B. The trial court properly denied the motion to suppress.
Defendant argues that: (1) the second breath sample was taken from defendant in violation of the Fourth Amendment because there was no valid consent; and (2) the two breath samples taken after defendant was arrested were taken from defendant in violation of the Fourth Amendment because the incorrect advisement amounted to coercion that vitiated valid consent *188 and the inevitable discovery doctrine does not apply.
1. The second breath sample of .094%.
Defendant argues that the officer did not procure valid consent from Mr. Arter for the second breath sample. (He does not challenge the procurement of the first breath sample.)
The prosecution bears the burden of showing that the defendant's consent to search is voluntary and unaffected by coercion. The voluntariness of the consent is a factual question to be decided in light of all the circumstances. ( Estes v. Rowland (1993) 14 Cal.App.4th 508, 527, 17 Cal.Rptr.2d 901 [voluntariness of consent depends on totality of circumstances]; People v. Miller (1999) 69 Cal.App.4th 190, 202, 203, 81 Cal.Rptr.2d 410 ; [testimony of investigating officer adequately supported trial court's implied finding that defendant's consent was voluntary].)
Under People v. Ramirez (1997) 59 Cal.App.4th 1548, 1558, 70 Cal.Rptr.2d 341, the following factors are relevant to whether consent is voluntary:
(a) Whether the person consenting was in custody.
(b) Whether the arresting officers had their guns drawn.
*7 (c) Whether Miranda warnings had been given.
(d) Whether the person consenting was told that he or she had a right not to consent.
(e) Whether the person consenting was told that a search warrant could be obtained.
Even if a defendant is under arrest at the time of the search does not preclude a finding that his or her consent to the search was voluntary. ( United States v. Watson (1976) 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 [consent was freely given following defendant's warrantless arrest; custody alone is not enough in itself to demonstrate coercion]; People v. Fischer (1957) 49 Cal.2d 442, 448, 317 P.2d 967 [consent given while under arrest is not involuntary as matter of law]; People v. Monterroso (2004) 34 Cal.4th 743, 758, 22 Cal.Rptr.3d 1, 101 P.3d 956 [when consent to search was sought and given, defendant (1) had been arrested, (2) was in handcuffs, (3) had not been given Miranda warnings, and (4) had not been informed of right to withhold consent; these are factors to be considered, but did not preclude finding that consent was voluntary].)
Consent need not be express; it may be implied from acts. ( Tidwell v. Superior Court (1971) 17 Cal.App.3d 780, 784, 95 Cal.Rptr. 213 [gestures; defendant turned slightly, as though speaking to someone, turned back toward door, opened it wider, and stepped back]; People v. Martino (1985) 166 Cal.App.3d 777, 791, 212 Cal.Rptr. 45 [implied consent; defendant, after hearing knock at door and announcement that police officer was conducting narcotics investigation, stepped back and opened door].)
Initially, the officer commenced field sobriety tests by asking defendant if he could see his eyes, a request to which defendant assented. Thereafter, defendant consented to the first breath test, a sample defendant does not here challenge. When defendant submitted to the second breath test, he was not in custody, and there is no evidence that defendant was subject to a show of force by the officer. He did not withdraw the consent he previously gave. There is no evidence that the officer badgered defendant and there is no evidence that he made any promises or threats to obtain defendant's consent. Defendant never tried to stop or limit the search. ( Miller, supra, 203, 81 Cal.Rptr.2d 410.) These circumstances favor a finding of voluntary consent.
*189 Defendant argues that the officer's telling defendant that the breath test was being administered as part of the field sobriety tests vitiates any consent. Defendant cites no legal authority holding that the administration of field *8 sobriety tests along with the breath tests alone undermines a finding of consent. ( People v. Stanley (1995) 10 Cal.4th 764, 793, 42 Cal.Rptr.2d 543, 897 P.2d 481 [failure to cite adequate authority waives appellate review of issue].) As set forth in Ramirez , it is a multi-factored determination, none of which defendant analyzes. The evidence supports an implied finding that defendant consented to the breath test.
2. The two post-arrest breath samples.
Defendant argues that the inaccurate advisement vitiated defendant's consent to the two post-arrest breath samples, and that inevitable discovery does not apply to the samples.
An exception to the warrant requirement exists if an authorized party voluntarily consents to a search without a warrant. ( People v. James (1977) 19 Cal.3d 99, 106, 137 Cal.Rptr. 447, 561 P.2d 1135.) Under settled constitutional principles, a party may waive the warrant requirement and consent to a search if the waiver is voluntary, authorized properly and solicited without threat, coercion or fraud. ( Bumper v. No. Carolina (1968) 391 U.S. 543, 550, 88 S.Ct. 1788, 20 L.Ed.2d 797.)
Because blood-alcohol breath tests are significantly less intrusive than blood tests and in most cases amply serve law enforcement interests, a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving. As in all cases involving reasonable searches incident to arrest, a warrant is not required. ( Birchfield v. North Dakota (2016) --- U.S. ----, 136 S.Ct. 2160, 195 L.Ed.2d 560.)
Birchfield involved three motorists who were arrested for drunk driving. One motorist agreed to a roadside breath test but, after his arrest, refused a blood test, and was convicted of a misdemeanor under a state statute making refusal to take a blood alcohol concentration (BAC) test a crime under the state's implied consent law. A second motorist refused to take a breath test at the police station after his arrest, and was charged with test refusal in the first degree. A third motorist was arrested and taken to a hospital where he consented to have his blood drawn, but later argued that his consent to the blood test was coerced by the officer's warning that refusal to consent would be a crime. The Supreme Court held: (a) a warrantless breath test conducted as a search incident to arrest does not violate the Fourth Amendment; (b) a warrantless blood test conducted as a search incident to arrest violates the Fourth Amendment, absent exigent circumstances; and (c) a driver cannot be subjected to a criminal penalty for refusal to take a blood test.
Breath tests do not "implicat[e] significant privacy concerns," even though they involve putting a mouthpiece into the mouth and blowing out air *9 from deep in the lungs. Like using swabs to obtain DNA samples or scraping under fingernails, these tests involve a negligible intrusion. ( Id ., at p. 2176.) They take only one bit of information and do not leave any biological sample in the possession of the police. ( Id . at p. 2177.) And they do not increase the embarrassment inherent in an arrest. They are usually administered in a police station, a patrol car, or otherwise out of public view. In any event, one under arrest has a diminished expectation of privacy. ( Ibid . )
Officer Machado took the two additional breath samples from defendant after he placed defendant under arrest. Defendant *190 takes the position that Birchfield does not apply to this case because it is a boating under the influence case, not a driving under the influence case. We found an Iowa Supreme Court case which rejects defendant's contention. ( State v. Pettijohn (2017) 899 N.W.2d 1.) We follow it as persuasive authority and uphold the constitutionality of the two breath samples.
The Iowa Supreme Court considered a defendant's argument that Birchfield 's holding should not apply to boating under the influence cases:
Pettijohn argues applying the balancing test the Birchfield Court used to determine whether the search-incident-to-arrest exception applies to arrests for drunk driving yields a different result in the context of drunk boating for two reasons. First, he argues the individual interest at stake in the boating context is more significant than in the driving context because a person has a natural right to navigate state waterways and does not need a license to operate a boat. Second, he argues the government interest in preventing drunk boating is far less compelling than the government interest in preventing drunk driving. ( Id . at p. 19.)
The Pettijohn court rejected the defendant's arguments:
We reject this analysis. First, in determining whether the search-incident-to-arrest exception to the Fourth Amendment right to be free from unreasonable searches applies, the individual interest to be assessed is the degree to which a warrantless search will intrude upon his or her privacy interests. Second, though government statistics indicate drunk boating causes far fewer annual fatalities than drunk driving, we conclude the government interest in preventing and deterring injuries and fatalities is similar in the drunk driving and the drunk boating contexts. Though we acknowledge government statistics suggest drunk boating causes far fewer annual fatalities than drunk driving, alcohol is the leading known contributing factor in both fatal boating accidents and fatal motor vehicle accidents.
Applying Birchfield, we conclude the Fourth Amendment permits the administration of a warrantless breath test to determine the BAC of an *10 individual lawfully arrested on suspicion of boating while intoxicated. The BAC test at issue in this case was a breath test rather than a blood test, and Officer Drish administered it after reading an implied-consent advisory to Pettijohn following his lawful arrest. Therefore, we conclude the breath test constituted a search incident to arrest excepted from the Fourth Amendment's warrant requirement under Birchfield.
While the court in Pettijohn concluded that the breath test was not constitutional under the Iowa state constitution, its reasoning still applies here because we are concerned here with whether the breath samples implicate constitutional concerns under the Fourth Amendment.
The two breath tests were constitutionally obtained under Birchfield . We need not resolve whether the breath samples were validly obtained under the inevitable discovery doctrine.
DISPOSITION
The trial court's order is AFFIRMED .
WE CONCUR:
David Rosenberg, Judge of the Appellate Division
Daniel Maguire, Judge of the Appellate Division