Filed 10/26/22  P. v. Morcos CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B319289 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA094334) |
| v. | |
| HADY WAEL MORCOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Cynthia L. Ulfig and Michael Terrell, Judges. Affirmed.

Law Offices of Gregory Rubel and Gregory Rubel for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

In March 2020, the People filed a complaint alleging that defendant and appellant Hady Wael Morcos committed a burglary. Morcos was incarcerated in state prison at the time the complaint was filed. On July 13, 2020, Morcos submitted a written request to be brought to trial on the burglary charge within 90 days, pursuant to Penal Code[1] section 1381. Although the People filed two requests in July and September 2020 to have Morcos transported to the courthouse, Morcos was not brought to trial within 90 days of July 13, 2020.

On June 16, 2021, Morcos moved to dismiss the charge because of the People's failure to adhere to section 1381's 90-day deadline. The statute explicitly provides that the trial court "shall" dismiss the charge if the defendant is not brought to trial within 90 days of his or her written request. (See § 1381.) On July 23, 2021, the trial court denied the motion, reasoning that the COVID-19 pandemic prevented the People from transporting Morcos to the courthouse prior to the expiration of the statutory time limit. The court observed that courts across the state were closed down for most purposes in March 2020 and had minimal staffing at that time; during the 15–18 months prior to the hearing on Morcos's motion, prison officials were not transporting defendants to the courthouse; and, during that timeframe, there were COVID breakouts within the prison and jail systems. On March 9, 2022, Morcos pleaded nolo contendere to one count of first degree residential burglary and the court sentenced him to two years in prison.

On appeal, Morcos argues the trial court erred in denying his motion to dismiss. He relies principally on the fact that

---

[1] Undesignated statutory citations are to the Penal Code.

2

section 1381 does not explicitly provide that the People may avoid dismissal by showing good cause for delay, in contrast to another statute that expressly includes a good cause exception to a 60-day statutory deadline to bring a defendant to trial (i.e., § 1382, subd. (a)).

We conclude that under the limited circumstances of this case, the trial court did not err in denying Morcos's motion. In so doing, we acknowledge that the literal text of section 1381 supports Morcos's position that the statute required the trial court to dismiss the burglary charge regardless of whether the COVID-19 pandemic prevented the People from bringing him to trial within the 90-day statutory deadline. Nevertheless, the instant appeal presents a circumstance in which the literal meaning of a statute must give way to the imperative of protecting public health in the midst of an unprecedented pandemic involving a deadly and contagious disease.[2] Were we to hold otherwise, then state officials would be presented with a Hobson's choice of either complying with the 90-day time limit or undertaking measures critical to preventing the spread of this deadly disease.

As our colleagues in Division Eight noted in another case involving this public health crisis: "The words of Thomas Jefferson bear weight. 'A strict observance of the written law is doubtless one of the high duties of a good citizen, but it is not the

---

[2] (See *People v. Breceda* (2022) 76 Cal.App.5th 71, 74–75, 91 (*Breceda*) [characterizing the COVID-19 pandemic as "an unprecedented global health crisis" involving "a mysterious, contagious, and deadly virus," and noting that the Chief Justice issued an order "stating ' "[c]ourts are clearly places of high risk during this pandemic because they" ' are well populated"].)

3

highest.  The laws of necessity, of self-preservation, of saving our country when in danger, are of higher obligation.  To lose our country by a scrupulous adherence to the written law, would be to lose the law itself, with life, liberty, property and all those who are enjoying them with us; thus absurdly sacrificing the ends to the means.'  [Citation.]"[3]

In accordance with Jefferson's observations, we conclude that an aid to statutory construction called the impossibility doctrine supports the trial court's ruling.  Specifically, case law from the civil and criminal contexts establishes that a court may excuse a party's failure to comply with a statutory mandate on the ground of impossibility if doing so reflects the proper understanding of the provision's underlying legislative intent.  We conclude that the impossibility doctrine applies to section 1381 because the Legislature enacted the statute to curtail state officials' willful or negligent failure to safeguard a defendant's speedy trial right, and not to penalize the People when compliance with the 90-day limit was impossible.

This case is unique in another significant respect, to wit, Morcos makes no serious effort to rebut the trial court's presumptively correct finding that the COVID-19 pandemic prevented the People from bringing him to trial within 90 days of submission of his written request.  Instead of demonstrating that he could have been safely brought to trial during that timeframe, Morcos resorts to a statute that allows for two-way electronic

---

[3] (*People v. Edwards* (2022) 76 Cal.App.5th 523, 526–527 (*Edwards*); see *id.* at p. 525 [noting *Edwards* concerned whether a trial court "violate[d] the confrontation clause . . . [by] order[ing] trial witnesses to wear masks during the current pandemic"].)

audiovideo communication for proceedings *other than trials*, he claims to have been in quarantine for only part of the 90-day period, and he questions the credibility of a notation in the court record that medical staff were unable to grant his request for medication that he takes on a daily basis.

Thus, under these limited circumstances in which state officials were confronted with an unprecedented public health crisis and the appealing defendant has made no meaningful effort to show it was possible to bring him to trial timely and safely, we affirm the judgment.

## PROCEDURAL BACKGROUND[4]

We summarize only those aspects of the procedural history that are relevant to our disposition of the instant appeal.

On or about March 13, 2020, the People filed a complaint alleging that Morcos committed a burglary. The day after the complaint was filed, a judicial officer signed the People's request

---

[4] Our procedural background is derived in part from admissions in the parties' appellate briefing and assertions the Attorney General makes in his respondent's brief that Morcos does not dispute in his reply. (See *Williams v. Superior Court* (1964) 226 Cal.App.2d 666, 668, 674 [criminal case in which the Court of Appeal stated: " 'An express concession or assertion in a brief is frequently treated as an *admission* of a legal or factual point, controlling in the disposition of the case.' "]; *Reygoza v. Superior Court* (1991) 230 Cal.App.3d 514, 519 & fn. 4 [criminal case in which the Court of Appeal assumed that an assertion made by respondent was correct because the "defendant did not dispute respondent's claim in his reply"]; *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].)

to have Morcos transported to the courthouse in connection with this case.  On March 27, 2020, a prison statewide tracking sheet reported that Morcos was housed in a quarantine area for 14 days, and that several of the inmates in the quarantine had flu-like symptoms.

On July 13, 2020, Morcos submitted a written request to be brought to trial pursuant to section 1381.  On July 22, 2020, the People filed a second request to have Morcos transported to the courthouse, which was signed by a judicial officer on July 24, 2020.  Affixed to one of the court copies of this order is a note stating that, " 'for whatever reason the prisons did not transport.' "  An August 31, 2020 prison statewide tracking sheet reported the prison system was unable to transport Morcos because he was placed in a COVID-19 quarantine.[5]  According to a September 2, 2020 note contained in the court file, the sheriff's department reported that the state prison did not transport Morcos to the courthouse.

On September 9, 2020, the People filed another request to have Morcos transported to the courthouse, which was signed by a judicial officer on September 11, 2020.  A note in the court file dated October 7, 2020 reported that the medical staff at an institution identified as " 'SCC R&R' " was " 'unable to clear medication prisoner Morcos requires daily.' "

On June 16, 2021, Morcos filed a motion to dismiss pursuant to section 1381.  On July 23, 2021, the People filed an opposition to Morcos's motion.

---

[5]  This August 31, 2020 prison statewide tracking sheet indicated that Morcos was placed in quarantine on *September* 11, 2020.  The Attorney General admits the record contains "no explanation as to th[is] date discrepanc[y]."

The trial court heard Morcos's motion on July 30, 2021. Morcos was in court and apparently no longer in custody.[6] Upon hearing oral argument from defense counsel,[7] the court denied the motion due to "the extraordinary circumstances of 2020 and COVID-19 and the global pandemic . . . ." In rendering its decision, the court remarked that "on March 19th of 2020, all of L.A. County and the State of California shut down" and "[t]he courts were closed except for very minimal . . . staffing"; "over the past 15, 18 months . . . [prison officials] have not been transporting people" and there were "COVID breakouts within the jail system" and "the state prison system"; and the People "made every reasonable attempt to have [Morcos] brought forth on these charges" but, "based on the global pandemic, he was unable to be brought to the courthouse."

After Morcos was held on to answer on the burglary charge, the People filed an information charging Morcos with one count of first degree residential burglary, in violation of section 459. On March 9, 2022, Morcos pleaded nolo contendere to one count of first degree residential burglary and was sentenced to the low

---

[6] In his opening brief, Morcos asserts that he was "released from custody on or about April 7, 2021," and that "he was arraigned on the Complaint" on May 10, 2021. Morcos does not support these assertions with any citation to the record. (See *People v. Flint* (2018) 22 Cal.App.5th 983, 1006, fn. 17 [noting that an appellate court may " 'decline to consider any factual assertion unsupported by record citation at the point where it is asserted' "].) Nevertheless, the reporter's transcript indicates that Morcos had been released from custody at some point prior to the July 30, 2021 hearing on his motion.

[7] The People elected not to argue at the hearing on the motion.

term of two years in prison, pursuant to a plea agreement with the People.  On March 14, 2022, Morcos filed a notice of appeal and a request for a certificate of probable cause.  The trial court granted the request for a certificate of probable cause on March 21, 2022.

## DISCUSSION

Section 1381 provides in pertinent part:  "If a charge is filed against a person during the time the person is serving a sentence in any state prison . . . it is hereby made mandatory upon the district attorney of the county in which the charge is filed to bring it to trial within 90 days after the person shall have delivered to said district attorney written notice of the place of his or her imprisonment or commitment and his or her desire to be brought to trial upon the charge, unless a continuance is requested or consented to by the person, in open court, and the request or consent entered upon the minutes of the court, in which event the 90-day period shall commence to run anew from the date to which the request or consent continued the trial.  In the event the action is not brought to trial within the 90 days the court in which the action is pending shall, on motion or suggestion of the . . . defendant or . . . his or her counsel . . . dismiss the charge."[8]  (§ 1381.)

Morcos contends section 1381 required the trial court to dismiss the complaint against him because the People did not

_____

[8] Although Morcos and the Attorney General agree that section 1381 applies, neither side identifies Morcos's prior conviction(s) or the length of the prison sentence that he was serving at the time the People filed the instant criminal complaint.

bring him to trial within 90 days of the written request that he submitted on July 13, 2020. Morcos points out that in opposition to his motion, the People argued that they tried several times to comply with section 1381 but were unable due to COVID-19 related reasons. Morcos asserts the People's argument is unavailing because section 1381 does not contain an exception that allows the People to avoid dismissal on the ground of good cause for the delay. Morcos further argues that the state's emergency orders concerning the COVID-19 pandemic do not excuse noncompliance with section 1381's 90-day deadline. Additionally, Morcos claims that "[w]hile transportation of [him] . . . from the state prison to court may have been challenging due to COVID-19 related reasons, there was a viable option: . . . section 977.2(a), which" allows certain proceedings to be conducted by two-way electronic audiovideo communication. For the reasons discussed below, we conclude that section 1381 tacitly empowered the trial court to deny Morcos's motion on the basis that compliance with the statutory 90-day deadline was not possible.

As a preliminary matter, we observe that Morcos fails to controvert the factual findings supporting the trial court's order denying his motion to dismiss. In his reply, Morcos asserts that he was not "in COVID-19 quarantine . . . for the entire 90 day period," and he intimates that "the October 7, 2020 . . . note in the Court's file stating that [he] could not be transported because he requires daily medication" lacks credibility. Yet, Morcos offers no response to the trial court's findings that "on March 19th of 2020, all of L.A. County and the State of California shut down" and the courts were closed for most purposes with minimal staffing; the state prisons were not transporting inmates to the

9

courts "over the . . . 15[–]18 month" period preceding the hearing on the motion to dismiss; and, during that timeframe, there were "COVID breakouts within the jail system" and "the state prison system." Nor does Morcos explain why these findings fall short of supporting the trial court's conclusion that "he was unable to be brought to the courthouse" because of "the global pandemic." Thus, Morcos has not discharged his burden of affirmatively demonstrating the court erred in finding the COVID-19 pandemic prevented the People from securing his physical presence within section 1381's 90-day deadline.[9]

To put the trial court's factual findings in context, we further note that the Chief Justice of our Supreme Court issued an order suspending all jury trials for 60 days on March 23, 2020, in part because " '[c]ourt proceedings require gatherings of court staff, litigants, attorneys, witnesses, and juries, well in excess of the numbers allowed for gathering under [then-]current executive and health orders' " (see *Breceda*, *supra*, 76 Cal.App.5th at pp. 82–83); on April 29, 2020, the Chief Justice extended that jury trial suspension from 60 to 90 days (see *id.* at p. 83); and, by the time section 1381's 90-day period elapsed in the instant case in October 2020, the pandemic had killed over 200,000

---

[9] (See *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573 (*Sanghera*) ["Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error."]; *People v. Arter* (2017) 19 Cal.App.5th Supp. 1, 6 (*Arter*) [identifying "three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error"].)

Americans. (See *Edwards*, *supra*, 76 Cal.App.5th at p. 526.) Although these facts are not essential to our disposition of this appeal, they further support the trial court's finding that the dangers posed by the pandemic prevented the People from safely bringing Morcos to trial within 90 days of July 13, 2020.

Furthermore, section 977.2, subdivision (a) does not support Morcos's claim that the People could have brought him to trial within the 90-day period. That provision states that "in any case in which the defendant is charged with a misdemeanor or a felony and is currently incarcerated in the state prison, the Department of Corrections and Rehabilitation may arrange for all court appearances in superior court, *except for the* preliminary hearing and *trial*, to be conducted by two-way electronic audiovideo communication between the defendant and the courtroom in lieu of the physical presence of the defendant in the courtroom." (See § 977.2, subd. (a), italics added.)

Admittedly, section 977.2, subdivision (a) also provides: "If the defendant agrees, the preliminary hearing and trial may be held by two-way electronic audiovideo communication." (§ 977.2, subd. (a).) In his opening appellate brief, Morcos excludes this part of section 977.2, subdivision (a) in quoting that subdivision, and he does not mention it in his reply; a fortiori, he did not rely on it or direct us to any evidence that he had agreed or requested to participate in the trial via two-way electronic audiovideo communication. Also, Morcos does not argue, let alone show, that the state prison at which he was housed or the courthouse for his trial could have accommodated any such remote trial. Given that the statutory text allowing Morcos to agree to trial via two-way electronic audiovideo communication was not added to section 977.2, subdivision (a) until August 6, 2020 (see

11

Stats. 2020, ch. 29, § 13), it is not clear whether this method of appearance was even an option prior to the expiration of the 90-day period. Morcos thus fails to show the People could have resorted to this provision to comply with section 1381. (See *People v. Evans* (2011) 200 Cal.App.4th 735, 756, fn. 12 [declining to address an argument that a party to a criminal appeal failed to support adequately].)

Consequently, Morcos has not overcome the presumption of correctness accorded to the trial court's ruling that the People could not bring him to trial prior to the expiration of section 1381's 90-day time limit. (See *Sanghera, supra,* 139 Cal.App.4th at p. 1574; *Arter, supra,* 19 Cal.App.5th Supp. at p. 6.)

Next, we assess the legal import of that undisturbed finding. Although we agree with Morcos that section 1381 does not explicitly authorize the trial court to deny a motion to dismiss on the ground the People showed good cause for the delay in bringing him to trial,[10] the omission of a good cause exception from the statute is not fatal to the court's ruling.

The Attorney General correctly points out that "[w]here the purpose of a statute is to prevent avoidable delay, a court can adopt ' "a statutory construction recognizing an implicit . . . exception" ' in particular circumstances." (Quoting *National Shooting Sports Foundation, Inc. v. State of California* (2018) 5 Cal.5th 428, 433 (*National Shooting Sports Foundation, Inc.*).) "For example, our courts have excused compliance with a statute of limitations where timely compliance was impossible; in such

---

**10** (See § 1381 [providing the trial court "shall . . . dismiss the charge" "[i]n the event the action is not brought to trial within the 90 days"].)

instances, the excusal was based on an interpretation of the statute of limitations in accordance with an underlying legislative intent to avoid unjust application of the statute."[11] (*National Shooting Sports Foundation, Inc.*, at p. 433.) These precedents "recognize[ ] that a statute may contain an implied exception for noncompliance based on impossibility where such an exception reflects a proper understanding of the legislative intent behind the statute." (See *id.* at p. 434.) "Impossibility" is "an aid to statutory interpretation" that "is akin to the absurdity canon, which counsels courts to 'avoid any [statutory] construction that would produce absurd consequences.' [Citations.]" (See *ibid.*)

Although the *National Shooting Sports Foundation, Inc.* court made these observations in the course of construing Civil Code section 3531 (see *National Shooting Sports Foundation, Inc.*, *supra*, 5 Cal.5th at pp. 433–434, citing Civ. Code, § 3531 ["The law never requires impossibilities."]), California appellate

---

[11] Although section 1381's 90-day deadline is analogous to a statute of limitations, we acknowledge that section 1381 differs from a statute of limitations because (as discussed subsequently in this part), section 1381 is intended to implement a constitutional provision, whereas "[a] statute of limitations serves to promote *the public policy of furthering justice* by precluding the assertion of stale claims." (*Hennessey's Tavern, Inc. v. American Air Filter Co.* (1988) 204 Cal.App.3d 1351, 1359, italics added.) Notwithstanding this distinction, we conclude, for the reasons provided in greater detail later in this opinion, that the impossibility doctrine applies because section 1381 was not intended to impose strict liability on the People for failure to adhere to the 90-day deadline. Instead, it was enacted to prohibit delay attributable to the willful or negligent misconduct of state officials.

13

courts have applied the impossibility doctrine in the criminal context as well.

For instance, the *Edwards* court tacitly relied on the principles underlying the impossibility doctrine when it rejected a confrontation clause challenge to a trial court's order requiring all persons in the courtroom, including witnesses, to wear masks in the course of a criminal trial held during the pandemic. (See *Edwards*, *supra*, 76 Cal.App.5th at pp. 525–527.) Although the *Edwards* court acknowledged that "[a] mask covering the nose and mouth undeniably impairs jurors' ability to see a witness's face to a degree," the appellate court concluded that this infringement of the defendant's right to confrontation was permissible because "it is undeniable that judges must not allow a jury trial to spread a deadly contagion" and "[t]he Constitution does not require judges to imperil public health." (See *ibid.*) In arriving at this conclusion, the *Edwards* court was, in effect, adopting a construction of the confrontation clause that " 'avoid[ed] . . . absurd consequences.' [Citations.]" (See *National Shooting Sports Foundation, Inc.*, *supra*, 5 Cal.5th at p. 433.)

The impossibility doctrine excuses the People's failure to bring Morcos to trial before section 1381's 90-day deadline elapsed. Section 1381 is one of several statutory provisions that constitute our Legislature's "interpretation of the [state] constitutional provision for speedy trial . . . ." (See *Barker v. Municipal Court of Salinas Judicial Dist.* (1966) 64 Cal.2d 806, 811–812 (*Barker*).) "The function of th[at underlying] constitutional provision is 'to protect those accused of crime against possible delay, caused either by *willful oppression*, or *the neglect of the state or its officers*.' [Citations.]" (See *id.* at p. 811, italics added.) Thus, it is apparent that in enacting section 1381,

14

the Legislature did not intend to penalize the People in cases where compliance with the 90-day limitation would be impossible. Furthermore, although the constitutional speedy trial right's "purpose and policy" is to "avoid[ ] the obvious prejudice which follows when required to defend against criminal charges long after commission of the alleged offenses" (see *Barker*, at p. 813), Morcos does not claim that the delay in the instant case resulted in any prejudice to him that may warrant enforcement of section 1381's deadline.[12]

Accordingly, we conclude that section 1381 "contain[s] an implied exception for noncompliance based on impossibility" that excuses the People's inability to bring Morcos to trial within the 90-day time limit, given that this construction and application of the provision "reflects a proper understanding of the legislative intent behind the statute." (See *National Shooting Sports Foundation, Inc.*, *supra*, 5 Cal.5th at p. 434.) We note that this conclusion is not inconsistent with our acknowledgment that, unlike section 1382, subdivision (a)(2), section 1381 does not, by its terms, include a good cause exception.[13] The "good cause"

---

[12] During the proceedings below, Morcos suggested the delay in bringing him to trial prevented him from settling his case with the People at an earlier date so that he could have served his prison sentence for the instant matter concurrently with the sentence he was serving when he submitted his section 1381 request on July 13, 2020. Morcos does not reassert this argument on appeal. In any event, this argument is not persuasive because Morcos did not explain how the delay in bringing him to trial precluded him from engaging in plea negotiations with the People.

[13] (See § 1382, subd. (a)(2) ["The court, unless good cause to the contrary is shown, shall order the action to be dismissed in

15

determination under section 1382 is committed to the trial court's
" 'broad discretion' " and calls for a flexible, " ' " 'totality of the
circumstances' " ' " analysis that allows the court to consider,
inter alia, " ' "the nature and strength of the justification for the
delay . . . ." ' "  (See *Hernandez-Valenzuela v. Superior Court*
(2022) 75 Cal.App.5th 1108, 1122–1124.)  Conversely, as
explained above, we construe section 1381 to include an implied
exception for cases that satisfy a far more onerous standard, i.e.,
where compliance with the statutory time limit is impossible, and
we conclude that Morcos has failed to rebut the trial court's
finding triggering that exception.[14]

---

the following cases:  [¶] . . . [¶] In a felony case, when a defendant
is not brought to trial within 60 days of the defendant's
arraignment on an indictment or information"]; see also *Barker*,
*supra*, 64 Cal.2d at pp. 811–812 [indicating that section 1382 is a
"specific provision[ ] declaratory of the constitutional right to a
speedy trial"].)

[14] We acknowledge that *Lacayo v. Superior Court* (2020)
56 Cal.App.5th 396, found that a trial court had erred in
continuing a preliminary hearing beyond the applicable statutory
deadline (i.e., within 60 days of the arraignment) on account of
the COVID-19 pandemic.  (See *id.* at pp. 397–398, 400.)  The
Court of Appeal reasoned that "the 60-day rule is absolute and
there is no good-cause exception to the rule . . . ."  (See *id.* at
pp. 399–400.)  The *Lacayo* opinion does not undermine our ruling
in the instant case, however, because the People conceded error
in *Lacayo* (see *id.* at p. 397), meaning the appellate court had no
occasion to consider the potential applicability of the
impossibility doctrine.  (See *Kim v. Reins International
California, Inc.* (2020) 9 Cal.5th 73, 85, fn. 4 [" '[C]ases are not
authority for propositions that are not considered.' "].)

*People v. Tucker* (2011) 196 Cal.App.4th 1313, provides further support for our conclusion that the impossibility doctrine applies to this case. There, the Court of Appeal upheld a trial court's decision to continue a trial because the "incarcerated criminal defendant [was] under quarantine to prevent the spread of infectious disease" that had led to the hospitalization of nearly 250,000 Americans and killed more than 11,000 of them, to wit, "the H1N1 flu virus." (See *id.* at pp. 1314–1316.) Although *Tucker* concerned a trial court's exercise of its discretion to find good cause for a continuance under section 1382, subdivision (a)(2) (see *Tucker*, at pp. 1316–1318), the decision is instructive here because it recognizes that "[p]ublic health concerns trump the right to a speedy trial," and that "[a] contrary holding would require trial court personnel, jurors, and witnesses to be exposed to debilitating and perhaps life-threatening illness." (See *id.* at p. 1314.) Likewise, because the spread of a dangerous and contagious disease prevented the People from bringing Morcos to trial within section 1381's 90-day timeframe, public health concerns must trump Morcos's interest in strict adherence to the statutory deadline.

In sum, we conclude that under the limited circumstances of this case, section 1381 impliedly authorized the trial court to deny Morcos's motion to dismiss on the ground that the People were unable to bring him to trial within 90 days of his July 13, 2020 written request.[15]

---

[15] We affirm the order denying Morcos's motion to dismiss even though the trial court did not explicitly mention the impossibility doctrine in its ruling. (See *People v. Stuckey* (2009) 175 Cal.App.4th 898, 913 [" 'If the *decision* of a lower court is correct on any theory of law applicable to the case, the judgment

**DISPOSITION**

The judgment is affirmed.
<u>NOT TO BE PUBLISHED.</u>


BENDIX, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.

---

or order will be affirmed regardless of the correctness of the grounds upon which the lower court reached its conclusion.' "].)