Filed 1/30/24  P. v. Enere CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B327284 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA090487) |
| v. | |
| YORDIN ENERE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David W. Stuart, Judge.  Affirmed in part and remanded with directions.

Debbie Yen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Defendant Yordin Enere was convicted of one count of carrying a loaded unregistered handgun in violation of Penal Code section 25850, subdivision (a) (count 1),[1] and one count of carrying a firearm in a public place while masked in violation of section 25300. After trial, the trial court orally sentenced Enere to the high term of three years in county jail for the unregistered handgun conviction; the minute order and abstract of judgment reflect the court imposed a two-year jail term for that count. Although the reporter's transcript does not disclose the trial court's sentence for the other count, the minute order indicates the court imposed, but stayed, a two-year jail term for that conviction.

On appeal, Enere argues (1) the trial court erred in ordering him to be restrained during the trial with a seatbelt not visible to the jury; (2) during their rebuttal argument, the People indirectly commented on Enere's decision not to testify in his defense, thereby violating Enere's Fifth Amendment right against self-incrimination, which violation was not harmless beyond a reasonable doubt; and (3) the court failed to instruct the jury properly on the charge of carrying a firearm in a public place while masked. Enere argues the cumulative effect of these errors deprived him of a fair trial. Finally, he contends his convictions violated his right to keep and bear arms secured by the Second and Fourteenth Amendments to the federal Constitution.

We reject Enere's claims of error. First, the trial court did not abuse its discretion in restraining Enere because his disciplinary reports revealed that while he was in custody, Enere repeatedly failed to follow law enforcement's instructions and

---

[1] Undesignated statutory citations are to the Penal Code.

was involved in two group beatings. Second, even assuming the People impliedly referenced Enere's right to remain silent during their rebuttal argument, the trial court's instructions and admonitions ensured that Enere suffered no prejudice from that brief purported reference. Third, Enere fails to show the court erred in giving the jury an instruction that mirrored the text of the statute proscribing the carrying of a firearm in a public place while masked. Because Enere has not demonstrated the existence of more than one trial error, his claim of cumulative error necessarily fails.

We reject Enere's Second and Fourteenth Amendment challenges as well. His facial constitutional challenge concerning the conviction for carrying a loaded unregistered handgun fails because the unconstitutional good cause requirement in the related licensing statute is severable from other licensing requirements that Enere does not contend violate his constitutional right to bear arms. His as-applied challenge to his conviction fails because Enere does not demonstrate that the unconstitutional good cause requirement in the licensing statute resulted in his conviction. As to the facial challenge to his other conviction, Enere fails to demonstrate that the statute prohibiting the carrying of a firearm in a public place while masked operates in an unconstitutional manner in the generality or great majority of cases. Enere's as-applied challenge to that conviction fails because there was no evidence he was carrying the firearm for self-defense purposes.

Although we affirm Enere's convictions, we exercise our discretion to remand the case to the trial court to clarify its sentence for each offense.

3

## FACTUAL AND PROCEDURAL BACKGROUND[2]

We summarize only those facts relevant to this appeal.

### 1. *The second amended information*

On September 12, 2019, the People filed a second amended information charging Enere with one count of carrying a loaded unregistered handgun, in violation of section 25850, subdivision (a) (count 1); and one count of carrying a firearm in a public place while masked, in violation of section 25300 (count 2).

### 2. *A summary of the People's trial evidence*

At approximately 9:00 p.m. on February 21, 2018, Officers Bojorquez and Bueno saw a man standing near fresh graffiti; the man was wearing a dark bandana that was covering his nose and the lower half of his face. As the officers approached the man in their patrol car, the man looked startled, held his waistband area, and began to run away.

Officer Bueno exited the patrol car and began chasing the man. Officer Bueno saw a handgun in the man's hand but noticed that the bandana was no longer covering the man's face; Officer Bueno believed that the bandana was around the man's

---

[2] We derive our Factual and Procedural Background in part from admissions made by the parties in their appellate briefing. (See *Williams v. Superior Court* (1964) 226 Cal.App.2d 666, 668, 674 [" 'An express concession or assertion in a brief is frequently treated as an *admission* of a legal or factual point, controlling in the disposition of the case.' "]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[A] reviewing court may make use of statements [in briefs and argument] . . . as admissions against the party.' "].)

neck area. Officer Bueno radioed that he needed assistance in apprehending a man with a gun.

Officer Bojorquez got out of the car and saw a man with a handgun in his hand. The man thereafter threw the handgun and a backpack.

Officer Bojorquez and Officer Bueno subsequently apprehended Enere, who was wearing a bandana around his neck. In his appellate briefing, Enere appears to concede that the officers found him approximately 40 feet away from where Officer Bojorquez saw a man discard the handgun and his backpack.[3] Enere further acknowledges Officer Bojorquez "testified that [Enere's] clothing—including the bandana around [Enere's] neck—was consistent with what he saw on the initial suspect and . . . that [Enere] was similar in stature to the initial suspect," although Enere complains that Officer Bojorquez did not elaborate further on the alleged similarities between Enere and the initial suspect.

Officer Bueno recovered a handgun. Enere acknowledges that Officer Bojorquez testified that the weapon Officer Bueno recovered was the same gun Officer Bojorquez had seen earlier. The handgun was loaded and appeared to be in working order. The weapon was not registered to Enere.

---

[3] Specifically, Enere states, "[T]he two officers converged on a man approximately 40 feet away from where Officer [Bojorquez] saw a man discard the handgun and his backpack. . . . [¶] [Enere] was the man they ultimately arrested."

5

3. ***The jury's verdict, the trial court's sentence, and Enere's notice of appeal***

The jury found Enere guilty on counts 1 and 2. As to count 1, the jury found that the firearm was not registered to Enere.

On November 21, 2022, the trial court conducted a sentencing hearing. As we explain in Discussion, part F, *post*, the record contains certain discrepancies regarding Enere's sentence.

Enere timely appealed the judgment.

## DISCUSSION

## A. The Trial Court Did Not Abuse Its Discretion In Ordering Enere to Be Restrained With a Seatbelt During the Trial

" ' "In general, the 'court has broad power to maintain courtroom security and orderly proceedings' [citation], and its decisions on these matters are reviewed for abuse of discretion. [Citation.] However, the court's discretion to impose physical restraints is constrained by constitutional principles. Under California law, 'a defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints.' [Citation.] Similarly, the federal 'Constitution forbids the use of visible shackles . . . unless that use is "justified by an essential state interest"—such as the interest in courtroom security—specific to the defendant on trial.' " ' [Citations.]" (*People v. Govan* (2023) 91 Cal.App.5th 1015, 1024 (*Govan*).)

" ' " ' "In deciding whether restraints are justified, the trial court may 'take into account the factors that courts have

traditionally relied on in gauging potential security problems and the risk of escape at trial.' [Citation.] These factors include evidence establishing that a defendant poses a safety risk, a flight risk, or is likely to disrupt the proceedings or otherwise engage in nonconforming behavior." ' " ' [Citations.]" (*Govan*, *supra*, 91 Cal.App.5th at p. 1024.) "[E]vidence that [the defendant] had acted violently in custody or in court, disrupted the court proceedings, or harbored an intent to escape" is pertinent to this analysis. (See *id.* at p. 1025.)

" ' " '[W]e will not overturn a trial court's decision to restrain a defendant absent "a showing of a manifest abuse of discretion." ' [Citation.] To establish an abuse of discretion, defendants must demonstrate that the trial court's decision was so erroneous that it 'falls outside the bounds of reason.' " ' [Citations.]" (*Govan*, *supra*, 91 Cal.App.5th at p. 1024.) Furthermore, "[p]erhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct and it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)

In a September 2019 pretrial hearing, the trial court ordered Enere to be restrained during the trial with a seatbelt that was not visible to the jury.[4] The court noted two murder charges were pending against Enere in other cases, and "[t]he sheriff's department believe[d Enere was] a safety risk during the trial." Regarding the latter point, the court indicated it had been

---

[4] Although not essential to our analysis, we observe the trial court ordered counsel for each party not to stand when the jury entered the courtroom to avoid drawing attention to Enere's inability to stand by virtue of the seatbelt restraint.

provided disciplinary reports showing: (1) on several occasions while in custody, Enere failed to follow the directions of law enforcement, including one instance when Enere "[s]imply refused" to "follow the directions of deputy sheriffs" to "come up from the ground floor to the fourth floor" in order to go to the court; (2) on May 1, 2018, Enere "was . . . involved in a 10-on-1 group beating" in the county jail; and (3) on June 1, 2019, Enere was involved in a "10-on-1 group beating" in the county jail.

On appeal, Enere argues his pending murder charges and the disciplinary reports did not give rise to a manifest need for the seatbelt restraint.[5] Although he admits "[i]t is unclear at how many [of the 17 court appearances before trial Enere] was present," he contends "there is no evidence . . . of [Enere] ever causing any problems in court or during transport to and from court." Enere also claims that even though he "appeared in court on three separate occasions" after a June 26, 2019 incident in which he failed to follow law enforcement's instructions, "[t]he record does not reflect any evidence of [Enere] being restrained during that time[ or] any need for [Enere] to be restrained . . . ." He maintains, "[T]here is no evidence in the record of [Enere] ever threatening witnesses, attorneys, or the judge," or of him "ever being aggressive or belligerent towards the bailiff, other sheriffs, or bystanders in court." He further asserts, "[T]he

---

[5] Enere further argues, "[T]he trial court failed to state on the record the grounds on which the Sheriff's Department found [Enere] to be a safety risk . . . ." Yet, the trial court mentioned the disciplinary reports immediately after it stated the sheriff's department believed Enere was a safety risk. Thus, the record suggests that the sheriff's department's conclusion that Enere posed a safety risk was predicated on those reports.

8

record does not reflect" he had made "any plans or attempts to escape . . . ." Enere claims that his "repeated and continued good behavior at all his numerous prior appearances undermined the trial court's finding of manifest necessity."

Although we agree with Enere that his pending murder charges alone would not have warranted the imposition of the seatbelt restraint,[6] Enere still has failed to demonstrate that the trial court abused its discretion. The court's decision to restrain Enere with a seatbelt device that was not visible to the jury fell within " ' " 'the bounds of reason' " ' " because there is no dispute that Enere had " ' " 'engage[d] in nonconforming behavior' " ' " while in custody (see *Govan*, *supra*, 91 Cal.App.5th at p. 1024), to wit, he was involved in two group beatings and had failed to follow instructions from law enforcement.

That the trial court had not previously restrained Enere does not demonstrate an abuse of discretion. Enere has not directed us to any evidence that the court had been informed of Enere's violent and concerning in-custody behavior at any point before the September 2019 hearing at which the court decided to restrain him. We thus presume the court was previously unaware of Enere's disciplinary reports. (See *People v. Arter* (2017) 19 Cal.App.5th Supp. 1, 6 ["[A]ll intendments and presumptions are indulged in favor of [the judgment's] correctness, and . . . appellant bears the burden of providing an adequate record affirmatively proving error."].) Second, the court could reasonably expect that Enere would pose more of a safety

---

**6** (See *Govan*, *supra*, 91 Cal.App.5th at p. 1025 [" ' "The mere facts that the defendant is an unsavory character and charged with a violent crime are not sufficient to support a finding of manifest need." ' "].)

9

risk during trial than he did during prior, shorter in-court proceedings at which no juror was present.

In sum, Enere has not shown the trial court erred in restraining him with a concealed seatbelt during the trial.

## B. Assuming Arguendo the Prosecutor Indirectly Commented on Enere's Decision Not To Testify, Any Such Error Was Harmless Beyond a Reasonable Doubt

"The Fifth Amendment to the United States Constitution provides that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself,' and the high court has interpreted this provision to 'forbid[ ] either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.' [Citation.]  The constitutional prohibition against compelled self-incrimination is a right that has been incorporated to apply against the states [citations], and we have accordingly held ' "a prosecutor is prohibited from commenting directly or indirectly on an accused's invocation of the constitutional right to silence" ' [citation]." (*People v. Thompson* (2016) 1 Cal.5th 1043, 1117 (*Thompson*), citing, inter alia, *Griffin v. California* (1965) 380 U.S. 609, 615 (*Griffin*).)  This type of constitutional violation is called "*Griffin* error" and is subject to the standard of prejudice set forth in *Chapman v. California* (1967) 386 U.S. 18.  (See *Thompson*, at p. 1118 & fn. 14.)  That standard "requires reversal unless the error is harmless 'beyond a reasonable doubt.'  [Citation.]"  (See *People v. Gonzalez* (2018) 5 Cal.5th 186, 195–196.)

At trial, defense counsel contested the issue of identity and argued that the People's "failure to produce the bandana" undermined their case.  In their rebuttal argument, the People

10

contended: "Some of you might think, well, you know, any other items collected from [Enere] is relevant. We don't need to produce it. You heard the testimony of the officers. If the defense felt it was necessary or relevant to produce it, failure to call logical witness[es] or present logical evidence, they would have presented that."

Defense counsel objected, and the parties and the trial court held a discussion at sidebar. The defense argued that the People were attempting to shift the burden of proof, and the trial court agreed with the defense. The court thereafter admonished the jury as follows: "So I'm going to sustain the objection and give you a little bit of instruction. [¶] So it's improper for the prosecution to suggest what the defense might have brought into evidence in a case where the defense is resting on the state of the evidence. [¶] So I'm going to order the jury to disregard any suggestion by [the prosecutor] that he is shifting the burden by suggesting what the defense could have or should have brought into evidence. [¶] So the objection is sustained."

On appeal, Enere argues the People's remark constituted "an indirect and impermissible comment on [Enere's] right [not] to testify" because (1) "the jury knew that there were only three people involved who would have any knowledge of whether or not [Enere] had a bandana: the two police officers [who testified] and [Enere] himself"; and (2) "[s]ince the jury [was] . . . aware that there [was] no video or photograph of [Enere] carrying the firearm, whether or not [he] did so could *only* be known to the two officers *or* [Enere]." Enere further contends the People's alleged *Griffin* error prejudiced him. In particular, Enere asserts that "the officers' testimony was the main evidence in support of both charges" because there was no other evidence that Enere was

11

masked or carrying a gun (e.g., no evidence of fingerprints on the gun); "[b]oth officers . . . failed to provide specific identifying detail of the masked man they saw by the fresh graffiti and [Enere], the man ultimately arrested"; Officer Bojorquez admitted he initially obtained only a glimpse of the man he was chasing for "a brief second"; and "the officers lost track of the man they were chasing on at least three different occasions."

Assuming arguendo that (1) the People did in fact commit *Griffin* error by indirectly commenting on Enere's decision not to testify, and (2) Enere's characterizations regarding the state of the trial evidence are accurate, we conclude this error was harmless beyond a reasonable doubt. "[W]hen faced with a prosecutor's utterance of comments of this type (i.e., short, isolated statements not clearly calling for improper consideration of a defendant's silence), [our high court has] generally found such comments harmless." (See *Thompson*, *supra*, 1 Cal.5th at p. 1118.)

The trial court mitigated any prejudice resulting from the People's alleged oblique reference to Enere's decision not to testify. Specifically, the trial court sustained defense counsel's objection to the allegedly improper remark and ordered the jury to disregard it. Enere claims this admonition was insufficient because it "did not specifically instruct the jury to not consider [Enere's] silence . . . ." Yet, Enere's suggested curative instruction could have drawn further attention to the People's alleged indirect reference to Enere's invocation of his Fifth Amendment right against self-incrimination. Notably, Enere ignores the fact the trial court had also instructed the jury that Enere had "an absolute constitutional right not to testify," and that the jury should "not consider, for any reason at all, the fact

12

that [Enere] did not testify."  "[A]bsent some indication to the contrary, we assume a jury will abide by [the] trial court's admonitions and instructions."  (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1336.)

Given these circumstances, we conclude beyond a reasonable doubt that notwithstanding the People's alleged indirect comment on Enere's right to remain silent, the jury drew no adverse inference from Enere's decision not to take the stand.

## C. The Trial Court Did Not Err In Instructing the Jury on Count 2

Recall that count 2 charged Enere with violating section 25300.  Section 25300, subdivision (a) provides:  "A person commits criminal possession of a firearm when the person carries a firearm in a public place or on any public street while masked so as to hide the person's identity."  (§ 25300, subd. (a).)

The trial court issued a special instruction on count 2, which was titled "carrying firearm while masked" (special instruction).  (Capitalization & boldface omitted.)  The instruction provides:  "The defendant is charged in Count 2 with carrying a firearm in a public place while masked.  In order to prove this charge, the People must prove that:  [¶] 1.  The defendant carried a firearm in a public place; [¶] 2. The defendant knew he was carrying a firearm; AND [¶] 3. The defendant was masked so as to hide his identity.  [¶]  The term firearm is defined in another instruction."

The trial court also issued an instruction entitled "union of act and intent:  general intent" (general intent instruction).  (Capitalization & boldface omitted.)  The instruction states:  "The crimes charged in this case require proof of the union, or joint operation, of act and wrongful intent.  [¶]  For you to find a

13

person guilty of the crimes charged, that person must not only commit the prohibited act, but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime."

Enere argues the trial court erred in issuing the special instruction because it "omitted the requisite *mens rea*—that defendant specifically intended to hide his identity," and that, by issuing the general intent instruction, the court "told the jury it could convict [Enere] on section 25300 on general intent alone."

As a preliminary matter, we note the Attorney General maintains Enere forfeited this claim of instructional error. Enere acknowledges, "When the trial court asked defense counsel what more is required [vis-à-vis the special instruction], defense counsel responded that it is not his responsibility to create an instruction." Enere argues his attorney preserved Enere's challenge to the instruction by raising an objection below, and that the trial court had a sua sponte duty to instruct the jury properly on every material element of the offense. We need not determine whether Enere forfeited this claim of error because we conclude that his claim fails on the merits.

" 'A trial court must instruct the jury, even without a request, on all general principles of law that are " 'closely and openly connected to the facts and that are necessary for the jury's understanding of the case.' [Citation.] . . . . [¶] We review . . . claims of instructional error de novo. [Citations.] 'In conducting this review, we first ascertain the relevant law and then "determine the meaning of the instructions in this regard." [Citation.] [¶] The proper test for judging the adequacy of

14

instructions is to decide whether the trial court "fully and fairly instructed on the applicable law . . . ." [Citation.] " 'In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given. [Citation.]' " [Citation.] "Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation." [Citation.]' [Citation.]" (*People v. Johnson* (2009) 180 Cal.App.4th 702, 707 (*Johnson*).)

Here, the text of section 25300 and of the special instruction reveals, and Enere acknowledges, that the "special instruction . . . mirrored the language of section 25300 in the use of 'so as to.' " Enere argues the special instruction should have stated that Enere could be convicted on count 2 only if he had "specifically intended to hide his identity."

" ' "[T]he language of a statute defining a crime or defense is generally an appropriate and desirable basis for an instruction, and is ordinarily sufficient when the defendant fails to request amplification. . . ." ' [Citation.] . . . *'When a word or phrase " 'is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request.'* " [Citations.] A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that differs from its nonlegal meaning.' [Citation.]" (*People v. Singh* (2019) 42 Cal.App.5th 175, 181 (*Singh*).)

15

Enere concedes in his opening brief, and we agree, that "[t]he plain usage and meaning of 'so as to' is to denote 'purpose[.]'" He further admits in his opening brief that the "common sense and . . . plain meaning" of this statutory text is a requirement that "a defendant . . . harbor a specific intent to conceal identity." Because there is no dispute that the meaning of "so as to hide his identity" from the special instruction " ' " 'is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law,' " ' " the trial court had no sua sponte obligation to define that phrase further for the jury.[7] (See *Singh, supra,* 42 Cal.App.5th at p. 181, italics omitted.) We further note that the court properly instructed the jury on the manner in which it should interpret an undefined word or phrase: "Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings."

Enere also argues, "[T]he failure to include language [in the special instruction] telling the jury that specific intent is required is error *because the trial court also gave [the general intent instruction],* which told the jury it could convict [Enere] on section 25300 on general intent alone."

We need not address this argument because Enere does not support his interpretation of the general intent instruction with

---

[7] Contrary to the position he takes in his opening brief, Enere suggests for the first time in his reply that the jury would be unable to "extrapolat[e] the requirement of specific intent from the words, 'so as to.'" Enere forfeited this contention. (See *People v. Taylor* (2004) 119 Cal.App.4th 628, 642–643 [concluding that a defendant had forfeited a contention by raising it for the first time in a reply brief].)

16

any analysis of its text. (See *People v. Evans* (2011) 200 Cal.App.4th 735, 756, fn. 12 [declining to address an argument that a party failed to support adequately].)

In any event, the general intent instruction merely required the jury to find Enere "commit[ted] the prohibited act . . . with wrongful intent" in order to convict him, the latter of which the instruction defines as "intentionally do[ing] a prohibited act . . . ." The general intent instruction does not state that this "wrongful intent" element supplants the "so as to hide his identity" language from the special instruction. Indeed, by instructing the jury to "[p]ay careful attention to all of [the trial court's] instructions *and consider them together*" (italics added), the court told the jury to give effect to both the special instruction and the general intent instruction. Because we " ' " 'assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given' " ' " (see *Johnson, supra*, 180 Cal.App.4th at p. 707), we reject Enere's assertion that the jury could have ignored the "so as to" language from the special instruction.

For the foregoing reasons, we conclude Enere has failed to demonstrate the trial court erred in instructing the jury on count 2.

## D. Enere's Cumulative Error Claim Fails

Enere argues that if each alleged error analyzed in Discussion, parts A, B, and C, *ante*, respectively, does not individually warrant reversal, "[t]he cumulative prejudicial effect of those errors [nevertheless] . . . deprived [him] of a fair trial." We have already concluded there was no error regarding the

17

seatbelt restraint and the instruction on count 2.**8** Enere's remaining assertion of *Griffin* error we have assumed without deciding but have concluded that any such error was harmless beyond a reasonable doubt. (See Discussion, part B, *ante*.) Accordingly, there are no errors to cumulate. (See *People v. Kocontes* (2022) 86 Cal.App.5th 787, 891 [indicating that a necessary predicate of a cumulative error claim is the existence of " 'a series of trial errors' "].)

## E.    Enere Fails To Demonstrate That His Convictions Violate the Right To Keep and Bear Arms Secured by the Second and Fourteenth Amendments

The Second Amendment to the federal Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." (U.S. Const., 2d Amend.) The United States Supreme Court has "recognized that the Second [Amendment] . . . protect[s] the right of an ordinary, law-abiding citizen to possess a handgun in the home" and "publicly for . . . self-defense," and that this "individual right[ is] . . . made applicable against the States through the Fourteenth Amendment . . . ." (See *New York State Rifle & Pistol Assn., Inc. v. Bruen* (2022) 597 U.S. 1, 8, 37 (*Bruen*).)

Enere raises facial and as-applied challenges to section 25850 on the ground that his conviction violates his constitutional right to keep and bear arms.**9** Enere also contests

---

**8** (See Discussion, parts A and C, *ante*.)

**9** In his opening brief, Enere does not expressly raise an as-applied challenge to section 25850, although he claims in his reply that we can infer that he did from the language in his

18

the constitutionality of his conviction under section 25300, although he fails to clarify whether he is raising a facial or an as-applied challenge to the legality of that statute. As explained below, Enere fails to demonstrate that these statutes are unconstitutional on their face or as applied to him.

1. *Relevant aspects of California's firearm licensing scheme*

Section 25850, subdivision (a) provides in relevant part: "A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city . . . ." (§ 25850, subd. (a).) "Section 25850 does not apply to the carrying of any handgun by any person as authorized pursuant to Chapter 4 (commencing with Section 26150) of Division 5." (§ 26010.) Thus, "section 25850 is in effect the enforcement mechanism of a regulatory regime that grants licenses to those who may lawfully carry firearms and withholds licenses from those who may not." (See *In re T.F.-G.* (2023) 94 Cal.App.5th 893, 915 (*T.F.-G.*), review den. Nov. 15, 2023, S282091.)

At the time Enere violated section 25850 in 2018 (see Factual & Procedural Background, part 2, *ante* [indicating the People's evidence showed the offense occurred in Feb. 2018]), section 26150, subdivision (a) provided: "When a person applies for a license to carry a pistol, revolver, or other firearm capable of

---

opening brief. The Attorney General argues Enere has forfeited an as-applied challenge. Even if Enere arguably forfeited an as-applied challenge, we exercise our discretion to address the issue and reject it on the merits. (See Discussion, part E.4, *post*.)

19

being concealed upon the person, the sheriff of a county may issue a license to that person upon proof of all of the following: [¶] (1) The applicant is of good moral character. [¶] (2) Good cause exists for issuance of the license. [¶] (3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business. [¶] (4) The applicant has completed a course of training as described in Section 26165 [(i.e., a firearm safety course)]." (Stats. 2015, ch. 785, § 2; see also *In re D.L.* (2023) 93 Cal.App.5th 144, 155 (*D.L.*) [indicating that § 26165 requires applicants to complete a firearm safety course], review den. Oct. 11, 2023, S281412.)

The Legislature thereafter made substantive changes to subdivision (a) of section 26150 that went into effect on January 1, 2024, including the elimination of the good cause requirement of subdivision (a)(2) and the insertion of language providing that the sheriff "shall" issue the license if the statutory criteria are satisfied. (See Stats. 2023, ch. 249, § 10 [filed with the Sec'y of State on Sept. 26, 2023]; Cal. Const., art. IV, § 8, subd. (c)(2) [providing that Jan. 1, 2024 is the effective date for these legislative revisions].) Neither party argues these legislative revisions impact our analysis of Enere's constitutional claims attacking the prior version of the statute.

For the sake of clarity, we refer to the version of section 26150, subdivision (a) that was in effect when Enere committed his offenses as the "pre-January 1, 2024 version" of the statute.

### 2. *Pertinent constitutional jurisprudence and standards of review*

"In 2008, for the first time since ratification of the Bill of Rights over 216 years before, the United States Supreme Court identified a constitutionally protected right to possession of handguns in the home in *District of Columbia v. Heller* (2008) 554 U.S. 570, 635." (*D.L.*, *supra*, 93 Cal.App.5th at p. 150.) "Two years after *Heller*, the United States Supreme Court decided *McDonald v. Chicago* (2010) 561 U.S. 742. The majority in *McDonald* held that the due process clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*." (*D.L.*, at p. 151.)

"The Second Amendment landscape changed further in June 2022 with the United States Supreme Court's opinion in *Bruen*. The plaintiffs in *Bruen* had applied in New York for unrestricted licenses to carry a handgun in public for self-defense, which were denied. [Citation.] Under New York law, a person is guilty of criminal possession of a firearm when they possess ' "any firearm" ' without a license, whether inside or outside the home. [Citation.] . . . An individual must obtain an unrestricted license to ' "have and carry" ' a concealed ' "pistol or revolver" ' to carry a firearm outside his or her home or place of business [in New York]." (*D.L.*, *supra*, 93 Cal.App.5th at p. 152.)

"Prior to *Bruen*, an applicant had to prove ' "proper cause exists" ' to issue the license. [Citation.] In other words, an applicant had to 'demonstrate[ ] a special need for self-defense.' [Citation.] *Bruen* noted that six other states, including California, had similar 'proper cause' requirements in their concealed carry licensing frameworks." (*D.L.*, *supra*, 93 Cal.App.5th at p. 152.) The *Bruen* plaintiffs sued New York

21

state officials for declaratory and injunctive relief, alleging these officials "violated their Second and Fourteenth Amendment rights by denying their unrestricted license applications on the basis that they had failed to show 'proper cause,' *i.e.*, had failed to demonstrate a unique need for self-defense." (*Bruen*, *supra*, 597 U.S. at p. 16.)

"The *Bruen* majority stated that, 'when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, . . . . the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. . . .' [Citation.] In other words, conduct that falls within the 'plain text' of the Second Amendment may be protected unless the government can identify an 'American tradition' justifying the regulation." (*D.L.*, *supra*, 93 Cal.App.5th at p. 152.)

Applying the first prong of that two-part test, the high court concluded, "The Second Amendment's plain text . . . presumptively guarantees [the plaintiffs] a right to 'bear' arms in public for self-defense." (See *Bruen*, *supra*, 597 U.S. at p. 33.) "The *Bruen* majority [also] concluded that New York did not meet its burden to identify an 'American tradition' justifying its 'proper cause' language, and concluded the requirement was unconstitutional." (*D.L.*, *supra*, 93 Cal.App.5th at p. 153.) Because the *Bruen* majority's analysis established that the plaintiffs had a viable constitutional challenge to New York's proper-cause requirement, the high court reversed the Second Circuit Court of Appeals' affirmance of a federal district court's dismissal of the plaintiffs' complaint, and remanded the matter for further proceedings. (See *Bruen*, at pp. 16–17, 71.)

The *Bruen* court emphasized that "nothing in [its] analysis should be interpreted to suggest the unconstitutionality of" licensing regimes that "issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." (See *Bruen*, *supra*, 597 U.S. at pp. 13, 38 & fn. 9.) The high court noted that jurisdictions with these regimes "often require applicants to undergo a background check or pass a firearms safety course," and remarked that these measures seem "designed to ensure only that those bearing arms . . . are, in fact, 'law-abiding, responsible citizens' " constitutionally entitled to "carry handguns publicly for self-defense." (See *id.* at pp. 8–9, 38 & fn. 9.)

"On June 24, 2022, the day after *Bruen* was released, the California Attorney General issued a legal alert recognizing that the good cause requirement in section[ ] 26150 . . . was no longer constitutional. [Citation.] The alert instructed local officials not to require proof of good cause for issuing a public-carry license effective immediately. [Citation.] Officials were directed to continue to apply the other licensing requirements, including proof of ' "good moral character." ' [Citation.]" (*People v. Mosqueda* (2023) 97 Cal.App.5th 399, 408 (*Mosqueda*).)

Facial and as-applied constitutional challenges to a statute require different showings. " 'A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual. [Citation.] " 'To support a determination of facial unconstitutionality, voiding the statute as a whole, [the party challenging the statute] cannot prevail by suggesting that in some future hypothetical situation

23

constitutional problems may possibly arise as to the particular *application* of the statute . . . .' " ' [Citations.]" (See *T.F.-G.*, *supra*, 94 Cal.App.5th at p. 911.) " '[T]he "minimum" our [Supreme Court's] cases have accepted [to prevail on a facial challenge] is a showing that the statute is invalid "in the *generality* or *great majority* of cases." ' [Citation.]" (See *id.* at p. 911.) "Put another way, 'a facial challenge must fail where the statute has a " 'plainly legitimate sweep.' " ' [Citation.]"[10] (See *D.L.*, *supra*, 93 Cal.App.5th at p. 157.)

"In contrast, '[a]n as applied challenge may seek . . . relief from a specific application of a facially valid statute or ordinance to an individual or class of individuals who are under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute or ordinance has been applied.' [Citation.] Such a challenge 'contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right. [Citations.] When a criminal defendant claims that a facially valid statute or ordinance has been applied in a constitutionally impermissible manner to the defendant, the court evaluates the propriety of the application on a case-by-case basis to determine whether to relieve the defendant of the

---

**10** Although a "statute [that] punishes constitutionally protected conduct as well as acts that may be validly prohibited" may, in certain circumstances, be "subject to facial invalidation" based on "the objection of overbreadth" (see 7 Witkin, Summary of Cal. Law (11th ed. 2023) Constitutional Law, § 452, italics omitted), Enere does not invoke the overbreadth doctrine here.

24

sanction.' [Citation.]" (*T.F.-G.*, *supra*, 94 Cal.App.5th at pp. 911–912.)

A "facial constitutional challenge . . . presents a pure question of law subject to de novo review." (*T.F.-G.*, *supra*, 94 Cal.App.5th at p. 908, fn. 11.) "When reviewing an as-applied constitutional challenge on appeal, we defer to the trial court's findings on historical facts that are supported by substantial evidence, and then independently review the constitutionality of the statute under those facts." (*People v. Mitchell* (2012) 209 Cal.App.4th 1364, 1378.)

> 3. *We reject Enere's facial challenge to section 25850 because the good cause requirement is severable from the remaining licensing requirements*

Enere argues that the pre-January 1, 2024 version of section 26150, subdivision (a) "contain[ed] a good cause requirement that the United States Supreme Court found in *Bruen* to be analogous to New York's 'proper cause' standard." Enere further contends, "Since [this version] of section 26150, subdivision (a), is unconstitutional, it follows that [Enere's] conviction for violating section 25850 must be overturned." In support of this position, Enere argues he "cannot be criminalized for exercising his right" "to carry a handgun at public places for self-defense" "when the only statute that would authorize him to carry a concealed firearm in public is unconstitutional." Enere does not contest the validity of any of the other statutory prerequisites for issuance of a license to carry under the pre-January 1, 2024 version of section 26150, subdivision (a) (e.g., the completion of a firearm safety course).

The Attorney General concedes *Bruen* "made clear that California's . . . 'good cause' requirement is unconstitutional."

25

The Attorney General maintains that Enere's facial challenge to section 25850 still fails because the good cause requirement is severable from the other licensing requirements of the pre-January 1, 2024 version of section 26150, subdivision (a). We agree with the Attorney General that the good cause requirement is unconstitutional for the reasons set forth in *Bruen*,[11] and that the good cause requirement is severable from the other statutory requisites.

"In the absence of express language confirming or prohibiting severability, we consider three criteria to determine whether we may save a statute by severing an unconstitutional provision in it: whether the provision is (1) ' "grammatically," ' (2) ' "functionally," ' and (3) ' "volitionally separable." '[12]

---

[11] (See *T.F.-G.*, *supra*, 94 Cal.App.5th at p. 899 ["California's 'good cause' licensing requirement is undisputedly unconstitutional under *Bruen*"]; *Mosqueda*, *supra*, 97 Cal.App.5th at p. 408 ["The *Bruen* court made clear that California's . . . 'good cause' requirement in section 26150 was unconstitutional."].)

[12] Neither party claims that at the time Enere violated section 25850, there was a provision expressly confirming or prohibiting severability of the "good cause" licensing requirement. (See also *D.L.*, *supra*, 93 Cal.App.5th at pp. 162–163 [indicating that when the opinion was issued on July 3, 2023, "section[ ] 26150 . . . lack[ed] any provision discussing severability one way or another"].) We note that newly-enacted section 25350 now provides, "If any section, subdivision, paragraph, subparagraph, sentence, clause, or phrase of any provision in [D]ivision [5, the division which contains sections 25850 and 26150,] is for any reason held unconstitutional, that decision does not affect the validity of any other provision in the division." (See Stats. 2023, ch. 249, § 7 [§ 25350, subd. (a), enacted on Sept. 26, 2023]; §§ 25350, 25850,

26

[Citation.] 'Grammatical separability . . . depends on whether the invalid parts "can be removed as a whole without affecting the wording" or coherence of what remains.' [Citation.] 'Functional separability depends on whether "the remainder of the statute ' "is complete in itself . . . ." ' " ' [Citation.] 'Volitional separability depends on whether the remainder " 'would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute.' " ' [Citation.]" (*D.L.*, *supra*, 93 Cal.App.5th at p. 163.)

In the wake of *Bruen*, our colleagues in the First, Third, and Sixth Districts have held that the good cause requirement imposed by the pre-January 1, 2024 version of section 26150, subdivision (a)(2) is severable from the remainder of the licensing scheme. (See *D.L.*, *supra*, 93 Cal.App.5th at pp. 144, 148; *Mosqueda*, *supra*, 97 Cal.App.5th at p. 403; *T.F.-G.*, *supra*, 94 Cal.App.5th at pp. 893, 916.) In particular, the Courts of Appeal have found the requirement is "grammatically separable because it is contained in a discrete subdivision"; "the provision is functionally separable because the remaining provisions are 'complete' in and of themselves, and 'capable of independent application' "; and the requirement is volitionally separable because the Legislature manifested its intention to retain the other licensing requisites, e.g., by reorganizing a prior version of the statute from "a single paragraph into distinct paragraphs." (See *D.L.*, at pp. 163–164; see also *T.F.-G.*, at p. 916 [adhering to *D.L.*'s analysis]; *Mosqueda*, at pp. 409–410 [same].) Our colleagues thus rejected facial constitutional challenges to

---

& 26150 [all three provisions appear in Division 5 of Title 4 of Part 6 of the Penal Code]; Cal. Const., art. IV, § 8, subd. (c)(2) [providing that Jan. 1, 2024 is the effective date for § 25350].)

section 25850, the enforcement mechanism of the state's licensing regime. (See *D.L.*, at pp. 147–148; *T.F.-G.*, at p. 899; *Mosqueda*, at pp. 403–404, 414.)

Enere has not directed us to any authority arriving at a different conclusion regarding the facial validity of section 25850, and our research has not disclosed the existence of any contrary published California authority. Because we find our colleagues' analysis persuasive, Enere's facial challenge fails. (See *The MEGA Life & Health Ins. Co. v. Superior Court* (2009) 172 Cal.App.4th 1522, 1529 [" '[W]e ordinarily follow the decisions of other districts without good reason to disagree.' "].)

Enere attempts to distinguish our sister districts' decisions. First, Enere points out that *D.L.*, *T.F.-G.*, and *Mosqueda* each involved "only facial challenges to the statute." Because Enere also raises a facial challenge to section 25850, we fail to discern how Enere's observation detracts from the reasoning of these cases.

Second, Enere asserts the defendants in *D.L.* and *T.F.-G.* "were minors and [Enere] is an adult," and that the defendant in *D.L.* was a felon whereas Enere had not been convicted of a felony when he violated section 25850. Because we " 'consider[ ] only the text of the measure itself' " in assessing Enere's facial challenge to section 25850, "his challenge does not turn on his personal characteristics," e.g., his age and criminal record. (See *T.F.-G*, *supra*, 94 Cal.App.5th at pp. 911–912.)

Third, Enere seems to argue his facial challenge is viable because the "unconstitutional good-cause requirement" of the pre-January 1, 2024 version of section 26150, subdivision (a)(2) "*was not yet severed*" from the remainder of the licensing statute when he possessed the firearm at issue. This argument is

28

perplexing. " 'The general rule [is] that judicial decisions are given retroactive effect[,]' "[13] and Enere does not identify any reason to depart from that general rule here. Additionally, the *D.L.* decision explicitly recognized "severability [is] an analytical tool" that may be used "to evaluate [a] facial constitutional challenge . . . to a pre-*Bruen* conviction under section 25850." (See *D.L.*, *supra*, 93 Cal.App.5th at p. 148.) We join *D.L.* and *T.F.-G.* in holding that the severability doctrine defeats a facial constitutional challenge to a pre-*Bruen* violation of section 25850. (See *D.L.*, at pp. 147–148; *T.F.-G.*, *supra*, 94 Cal.App.5th at pp. 899–902, 915–916 [indicating the offense occurred before the high court decided *Bruen* in 2022, and adhering to *D.L.*'s severability analysis].)

4.  *Enere's as-applied challenge to section 25850 fails because he does not claim he applied for a license or that the sheriff could not have denied him a license based on other licensing requirements*

As explained earlier in Discussion, part E.2, *ante*, to succeed in an as-applied challenge, Enere must show that, in the " 'particular circumstances' " of this case, the " 'application' " of the statute " 'deprived' " him " 'of a protected right.' " (See *T.F.-G.*, *supra*, 94 Cal.App.5th at p. 911.) The good cause requirement of the pre-January 1, 2024 version of section 26150,

---

[13]  (See *People v. Scott* (2023) 91 Cal.App.5th 1176, 1183, review granted on other grounds Sept. 27, 2023, S280776; see also *Lazarin v. Superior Court* (2010) 188 Cal.App.4th 1560, 1580 ["Unlike statutes, which normally operate prospectively absent an express legislative direction, judicial decisions are generally given retroactive effect."].)

subdivision (a)(2) is the only aspect of the licensing scheme Enere claims is constitutionally infirm.  Enere does not claim to have applied for a license for the firearm in question, or that the sheriff could not have denied any such application for a reason independent of the good cause requirement, e.g., the failure to complete a firearm safety course.  Because Enere has not shown that former subdivision (a)(2) abridged his right publicly to carry a weapon for self-defense, Enere's as-applied challenge to section 25850 fails.  (See *D.L.*, *supra*, 93 Cal.App.5th at p. 165 [concluding that "[e]ven if" the defendant "had asserted an as applied challenge," the court would have rejected that claim because his "conviction[ ] had nothing to do with the 'good cause' licensing requirement"]; *T.F.-G.*, at p. 912 [indicating that in order to prevail on an as-applied challenge, the defendant must "demonstrate that the hypothetical denial of a license . . . would have offended the Second Amendment"].)

### 5.    *Enere fails to demonstrate that section 25300 is unconstitutional on its face or as applied to him*

To recap, section 25300, subdivision (a) provides:  "A person commits criminal possession of a firearm when the person carries a firearm in a public place or on any public street while masked so as to hide the person's identity."  (§ 25300, subd. (a).)

Enere argues, "Section 25300 criminalizes *any* individual carrying a firearm while masked to hide his or her identity." Enere claims the statute "encompasse[s]" the following "course of conduct"—"carry[ing] a firearm while masked to hide the person's identity *for self-defense.*"  (Italics added.)  He further contends, "It is unconstitutional for a law to destroy an individual's right to self-defense simply because he or she was masked for perhaps an innocuous purpose—such as attending a masquerade, dressing

30

up for Halloween, et cetera—even if the intent was to hide one's identity."

Assuming arguendo that the plain text of the Second Amendment covers the "course of conduct" that Enere identifies, Enere's facial challenge to the statute nevertheless fails. The statutory text does not target individuals who are masked and armed for the purpose of defending themselves. (See § 25300, subd. (a).) Instead, it prohibits armed individuals from wearing masks in order to hide their identities. (See *ibid.*) Enere makes no effort to show, despite the fact the statute does not explicitly criminalize what he characterizes as constitutionally protected conduct, that section 25300 operates in an unconstitutional fashion " ' "in the *generality* or *great majority* of cases." ' " (See *T.F.-G.*, *supra*, 94 Cal.App.5th at p. 911.) That failure is fatal to his facial challenge. Merely " ' " 'suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute' " ' " is insufficient. (See *ibid.*)

Enere's as-applied challenge also fails. Enere does not direct us to any evidence that he wore the bandana or carried the firearm in self-defense. It necessarily follows that applying section 25300 to Enere did not violate his constitutional right to keep and bear arms. (See *T.F.-G.*, *supra*, 94 Cal.App.5th at pp. 911–912 [indicating that in order to successfully raise an as-applied challenge, the defendant must show that the statute " 'has been applied in a constitutionally impermissible manner to [him]' "].)

31

**F.    We Remand the Matter to the Trial Court To Clarify Enere's Sentences on Counts 1 and 2**

The reporter's transcript for the November 21, 2022 sentencing hearing shows that the trial court imposed "the high term of three years . . . . to be served in county jail" on count 1.[14] Absent from the transcript is an oral pronouncement of sentence on count 2 and the court's rationale for imposing the high term on count 1.  The latter omission is problematic for two reasons: (1) section 1170, subdivision (b)(2) provides that "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial"; and (2) subdivision (b)(5) obligates the court to "set forth on the record the facts and reasons for choosing the sentence imposed."[15]  (See § 1170, subds. (b)(2) & (b)(5).)

---

[14]  The Attorney General asserts, "The trial court's oral pronouncement of sentence [on count 1] was initially for the 'midterm of three years.' "  In the portion of the reporter's transcript cited by the Attorney General, however, the trial court was actually sentencing Enere to the midterm of three years for a conviction in a different case, to wit, for a violation of Health and Safety Code section 11379.

[15]  Senate Bill No. 567, which had added subdivisions (b)(2) and (b)(5) to section 1170, went into effect prior to the November 21, 2022 sentencing hearing.  (See Stats. 2021, ch. 731, § 1.3 [Senate Bill No. 567, which was filed with the Sec'y of State on Oct. 8, 2021 and added, inter alia, § 1170, subds. (b)(2) & (b)(5)]; Cal. Const., art. IV, § 8, subd. (c)(2) [providing that Senate

Contrary to the reporter's transcript, the minute order for the sentencing hearing and the abstract of judgment both show the trial court imposed the *midterm* of *two* years in county jail on count 1. The minute order also indicates the trial court imposed, but stayed pursuant to section 654, the midterm sentence of two years in county jail on count 2. Although the abstract of judgment indicates that the midterm was imposed (but stayed) on count 2, the abstract does not specify the duration of the sentence for that count.

Section 1260 provides that we "may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances." (See § 1260.) We exercise our discretion to remand this matter to the trial court to hold a new hearing for the purpose of clarifying which sentences it intended to impose for counts 1 and 2. (See *People v. Garcia* (1997) 59 Cal.App.4th 834, 838–839 [indicating that an appellate court may remand a case to the trial court to clarify its intended sentence].)

Bill No. 567 became effective on Jan. 1, 2022]; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038–1039 [agreeing with the Attorney General that "the amended version of section 1170, subdivision (b) that became effective on January 1, 2022, applies retroactively . . . as an ameliorative change in the law applicable to all nonfinal convictions"].)

## DISPOSITION

Defendant Yordin Enere's convictions are affirmed. We remand this matter to the trial court to hold a new hearing to clarify its sentences for counts 1 and 2.

NOT TO BE PUBLISHED.


BENDIX, Acting P. J.


We concur:



CHANEY, J.



WEINGART, J.